## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 24-cv-21136-JB

TUSHBABY, INC.,

     Plaintiff,

v.

THE CORPORATIONS, LIMITED LIABILITY
COMPANIES, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

     Defendants.

_____/

## SEALED ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

**THIS CAUSE** came before the Court upon Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application"), ECF No. [9]. The Court has carefully reviewed the Application and the pertinent portions of the record and is otherwise fully advised in the premises.

By the instant Application, Plaintiff, TushBaby, Inc., moves *ex parte* for entry of a temporary restraining order against Defendants, the corporations, limited liability companies, and unincorporated associations identified on Schedule "A" to the Complaint (collectively, "Defendants"), and entry of an order restraining the financial accounts used by Defendants, pursuant to Section 1125 of Title 15, United States Code, Section 502 of Title 17, United States Code, Federal Rule of Civil Procedure,

and Section 1651(a) of Title 28, United States Code.  ECF No. [9] at 1, 4.

Upon due consideration of the Motion, the pertinent portions of the record, the relevant authorities, and for the reasons set forth herein, Plaintiff's Application is hereby **GRANTED**.

## I.    FACTUAL BACKGROUND

Plaintiff owns trade dress ("TUSHBABY Trade Dress") and copyright registrations covered by U.S. Copyright Office Registrations Nos. VA 2-355-341, VA 2-360-715, VA 2-360-714, VAu 1-511-350, VA 2-360-713, VAu 1-511-354, VAu 1-511-372, and VAu 1-508-280 (collectively, the "TUSHBABY Copyrights" or "Plaintiff's Copyrights"), which Plaintiff alleges are valid and in full force and effect.  ECF Nos. [9-1] at ¶ 4; [9-2].

Defendants, through the various Internet-based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using infringements, reproductions, or colorable imitations of the TUSHBABY Copyrights and/or TUSHBABY Trade Dress.  *See* ECF No. [9-1] at ¶¶ 10–17.

According to Plaintiff, Defendants are not now, nor have they ever been, authorized or licensed to use or reproduce TUSHBABY Copyrights and/or TUSHBABY Trade Dress.  ECF No. [9-1] at ¶ 23.

Plaintiff alleges that it has investigated the promotion and sale of infringing versions of Plaintiff's trade dress and copyright-protected products by Defendants.  *Id.* at ¶¶ 10–25.  Plaintiff claims it accessed each of the e-commerce stores operating

under Defendants' Seller IDs, initiated the ordering process for the purchase of a product bearing infringements of the TUSHBABY Copyrights and/or TUSHBABY Trade Dress from each of the Seller IDs, and completed a checkout page requesting each product to be shipped to an address in the Southern District of Florida. *Id*. Plaintiff says it then conducted a review and visual inspection of the items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and determined the products were non-genuine, unauthorized versions of Plaintiff's products. *Id*.

## II.   <u>LEGAL STANDARD</u>

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be

3

required.

Fed. R. Civ. P. 65(b)(1).  *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## III.   CONCLUSIONS OF LAW

The declarations Plaintiff submitted in support of its Application support the following conclusions of law:

A.     Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using infringements, reproductions, or colorable imitations of TUSHBABY Copyrights and/or TUSHBABY Trade Dress, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's respective products that bear and/or use copies of TUSHBABY Copyrights and/or TUSHBABY Trade Dress.

B.     Because of Defendants' infringement of TUSHBABY Copyrights and/or TUSHBABY Trade Dress, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted.  The following specific facts, as set forth in Plaintiff's Complaint, Application, and accompanying declarations demonstrate that immediate and irreparable loss, damage, and/or injury will result to Plaintiff and consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1.      Defendants own or control e-commerce stores and commercial Internet websites operating under their respective seller identification names and domain names which advertise, promote, offer for sale, and sell products bearing and/or using infringing copyrights in violation of Plaintiff's respective rights;

2.      There is good cause to believe that more infringing products bearing and/or using Plaintiff's copyrights will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

3.      There is good cause to believe that if Plaintiff proceeds on notice to Defendants on this Application, Defendants can easily and quickly change the ownership or modify domain registration, e-commerce store, and private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names, private messaging accounts, and domain names, and transfer assets and ownership of the seller identification names and domain names at issue, thereby thwarting Plaintiffs' ability to obtain meaningful relief.

C.      The balance of potential harm to Defendants in restraining their trade in infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

D.      The public interest favors issuance of the temporary restraining order to protect Plaintiff's copyright interests and protects the public from being defrauded

5

by the illegal sale of counterfeit goods.

E.    Under Section 1125 of Title 15, United States Code, Section 1117(a) of Title 15, United States Code, and Section 504(a) of Title 17, United States Code, Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using infringements of Plaintiff's Copyrights and/or Trade Dress.  *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.    Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984), *abrogated on other grounds by AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 70 (2021)).

G.    In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal copyright laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

H.    Upon review of Plaintiff's Complaint, Application, and supporting evidentiary submissions, it is hereby **ORDERED AND ADJUDGED** that the

Application is **GRANTED**, according to the terms set forth below:

**TEMPORARY RESTRAINING ORDER**

(1)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained as follows:

a.     From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using Plaintiff's Copyrights and/or Trade Dress, other than those actually manufactured or distributed by Plaintiff; and

b.     From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing Plaintiff's Copyrights and/or Trade Dress; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiff's Copyrights; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Copyrights and/or Trade Dress on or in connection with all Internet-based e-

commerce stores and Internet websites owned and operated or controlled by them, including the Internet-based e-commerce stores and Internet websites operating under the Seller IDs and Subject Domain Names;

(3)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Copyrights and/or Trade Dress within domain name extensions, metatags, or other markers within website source code, on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet-based e-commerce stores and Internet websites registered, owned, or operated by each Defendant, including the Internet-based e-commerce stores and Internet websites operating under the Seller IDs and Subject Domain Names;

(4)     Each Defendant shall not transfer ownership of the Internet-based e-commerce stores and Internet websites operating under their Seller IDs and Subject Domain Names during the pendency of this action, or until further order of the Court;

(5)     Each Defendant shall preserve copies of all computer files relating to the use of any of the Internet-based e-commerce stores and Internet websites operating under their Seller IDs and Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Internet-based e-commerce stores and Internet websites operating under their Seller IDs and Subject Domain Names

that may have been deleted before the entry of this Order;

(6)     Upon Plaintiff's request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those registrants;

(7)     Within five business days of receipt of notice of this Order, Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms that are providing services for any of Defendants, including but not limited to Amazon, and their related companies and affiliates (together, the "Third-Party Providers"), shall:

a.     Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court.   Such restraining of funds and disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained.

b.     Provide Plaintiff expedited discovery regarding the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet-based e-commerce stores operating under the Seller IDs and Subject Domain Names identified on Schedule "A" to the Complaint, as well as any other accounts of the same

customer(s); (ii) the identity and location of Defendants identified in Schedule "A," including all known contact information and any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related; and (iv) information concerning sales of any Counterfeit Products made by Defendants.

(8)    Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(9)    The Clerk of the Court is directed to issue a single original summons in the name of "THE CORPORATIONS, LIMITED LIABILITY COMPANIES, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT" that shall apply to all Defendants.  In accordance with this Court's Order on Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule Of Civil Procedure 4(F)(3), the combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(10)    This Order shall apply to the Seller IDs and Subject Domain Names, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, private messaging accounts, domain names and websites, or financial accounts which are being used by Defendants for the purpose of infringing

Plaintiff's Copyrights and/or Trade Dress at issue in this action and/or unfairly competing with Plaintiff;

(11)     Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), by no later than **five business days** from the date of this Order, Plaintiff shall post a bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00) as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, which bond shall be held during the pendency of this action or until further Order of the Court.  Plaintiff shall file a notice with the Court to confirm its compliance with this provision.  In the Court's discretion, the bond may be subject to increase at any time should an application be made in the interest of justice;

(12)     After Plaintiff's counsel has received confirmation from the Third-Party Providers regarding the funds restrained as directed herein and expedited discovery produced by the same, Plaintiff shall serve a copy of the Complaint, Application, and this Order on each Defendant in accordance with Court's Order on Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(F)(3).  Plaintiff shall file a notice with the Court once service of process upon all Defendants has been perfected.  Then, Plaintiff shall file a motion to unseal any sealed entries on the Court record.  Moreover, Plaintiff shall continue to provide notice of these proceedings and copies of any and all documents filed in this matter to Defendants by regularly updating Plaintiff's notice serving website and by using other means reasonably calculated to give notice to

Defendants as permitted by the Court.

(13)    This Order shall remain in effect for **fourteen days** from the date of its

entry unless extended for good cause.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of April, 2024.

_____

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**