UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:24-cv-21136-JB

**TUSHBABY, INC.**,
Plaintiff,
v.
**THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"**
Defendants.
_____/

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TRO**

Defendant Fleerose, by and through its undersigned counsel, hereby responds in opposition to Plaintiff's Motion for TRO [DE 9] and Motion to Extend TRO [DE 18] and states as follows:

**LEGAL STARDARD**

District Courts within this Circuit hold that the standards for granting a temporary restraining order and a preliminary injunction are identical. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) *aff'd* 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l*

*Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).

When determining whether to grant a preliminary injunction, the court takes "all of the well-pleaded allegations in a movant's complaint and uncontroverted affidavits filed in support of the motion for preliminary injunction" as true." *Alabama v. United States Dep't of Commerce*, 546 F.Supp.3d 1057, 1063 (M.D. Ala. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)). "Additionally, the court may consider supplemental evidence, including hearsay, submitted by the parties." *Id.* (citing *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)).

ARGUMENTS AND MEMORANDUM OF LAWS

A. <u>**Plaintiff Will NOT Likely to Succeed on Its Claims.**</u>

*1. Plaintiff Will Not Likely Succeed on Its Copyright Infringement Claim.*

**a. Defendant Did Not Infringe the Alleged Copyright; The Infringer Shall be Plaintiff Once Fleerose' Patent Becomes Effective on April 30, 2024.**

With the idea of the picture a normal hip seat baby carrier, Defendant also registered its own copyright with US Copyright Offices, with Copy Right No. VAu 1-512-372. A copy of the copyright is attached as Exhibit "C" herein. Defendant also used different trademark "Fleerose"[1] that is completely different from Plaintiff's logo Tushbaby, in terms of color, shape and size. The comparison of the two pictures of Tushbaby and Fleerose are demonstrated as below Figure 1, which demonstrates sharp difference between the two.

---

[1] *See* Exhibit "D," Liu's Decl., ¶ 3.



*Figure 1: Comparison of Tushbby and Fleerose Products.*

More importantly, Fleerose registered its design patent with the USPTO for the above product with Patent No. D1024542 that will be issued on April 30, 2024. A copy of the patent Issue Notification is attached as Exhibit "E." The design patent made the following key exterior claims:[2]



*Figure 2: Claim of Patent for Hip Seat and Adjacent Pouch of Patent No. D1024542.*



*Figure 3: Claim of Patent for Pouch of Hip Seat Baby Carrier*

---

[2] *See* Exhibit "F," for the claims of design patent of US Design Patent No. D102,454,2.

As will be analyzed below, the copyright of a product does not protect the intellectual property of the copyright as the product images of a hip seat baby carrier look the same or similar at least fro all manufactuers. The copyright laws only protect the expression of idea, which instills the packaging or advertising an inherent distinctiveness and second meaning. Plaintiff's product does not instill inherent distinctive and second meaning, as will be analyzed below. Meanwhile, Fleerose will have its design patent on the hip seat baby carrier on the day of the hearing for preliminary injunction in the instant case on April 30, 2024. On that day, the infringer of the intellectual property of the hip seat is Plaintiff, not vice versa, as we have given due notice to Plaintiff.

**b. No Due Notice of Copyright Was Provided by Plaintiff.**

"The legislative history of the Copyright Act of 1976 emphasizes the benefits of requiring copyright owners to display a notice of copyright on their published works." Donald Frederick Evans v. Continental Homes, 785 F.2d 897, 905 (11th Cir. 1986), citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 143, *reprinted in* 1976 U.S. Code Cong. Ad.News 5659, 5759 [hereinafter cited as House Report]. "[A] copyrighted work published without the prescribed notice of copyright displayed was not protected. *Id.* "Upon such publication, a work entered the public domain." *Id.*

In the instant case, Plaintiff did not display any notice on their published works that allegedly registered copyrights with the U.S. Copyright Offices. *See* Exhibit "A" for the webpage printout of their copyrighted product at-issue, *available* at https://tushbaby.com/products/tushbaby?variant=15109665390658, last visited April 24, 2024; *see* also Exhibit "B" for their copy-

righted product at-issue on Amazon.³ *See* Exhibit "D," Jianyin Liu's Declaration in Support of Opposition to Motion for TRO. Thus, even if any pictures allegedly were registered with copyrights, such copyrights are not protected as Plaintiff failed to provide any notices to Defendant.

### c. Plaintiff's Alleged Copyrights Are Stock Scenes.

All baby hip seat baby carriers look the same. A hip seat baby carrier would always involve a small comfortable place for the baby to sit on, typically in round shape for comfort purpose, a strap to wrap around mom or dad's waist and a few pockets to stuff in diapers, milk bottles, or necessities for babies. "Copyrighted works are only granted protection to the extent of a particular expression of an idea; the idea itself is not protected." *Evans v. Wallace Berrie Co., Inc.*, 681 F. Supp. 813, 817 (S.D. Fla. 1988), citing *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513 83 L.Ed.2d 403 (1984); *Reyher,* 533 F.2d at 90; *Original Appalachian Artworks, Inc.,* 684 F.2d at 829 n. 11. The court held that "[b]oth Plaintiff's story and Defendants' story involve an underwater world." *Evans v. Wallace Berrie Co., Inc.*, 681 F. Supp. 813, 817 (S.D. Fla. 1988). "Such similarities as using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oyster or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civiliza-

---

³ ***Available*** at https://www.amazon.com/TushBaby-Only-Safety-Certified-Carrier/dp/B07R4C4VFX/ref=sr_1_1_sspa?dib=eyJ2IjoiMSJ9.2IAs9BX8bchqwENslhMlo0ZRZvFpWTGSQS22SylWR-L0wy009wWJKxtt_W-QFIIgfPBcBGYsn74Rob4qAJ8bL3aNkzUJY3Tp2LbtMZAbyiHNM1ZOAAdvZ-iX3nhaQRg7IF0lFANCcruBDthGpqD153t9pk3vNCnWbiu-zZPoA9xn61NyFbVYhJ0Ytn5QemQnf3S-Gfso5ABYgp0FlmaCafS_ACJUIUw3rKB6gl7vyr4qLLckT9V2i4-on-X2JCwQDEpwIiAzvGU1jOh-CImVRQGFscwXTUUhPD-_xL0TM_ud8ps.Hie-39nrMTnA6GnNZvCdewqGpJthtSFANcy-S2xL5jA&dib_tag=se&hvadid=518694419905&hvdev=c&hvlocphy=9052632&hvnetw=g&hvqmt=b&hvrand=17703052297083271869&hvtargid=kwd-548361581697&hydadcr=7289_11104361&keywords=tushbaby+hip+carrier&qid=1713992286&sr=8-1-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&psc=1, **last visited April 24, 2024.**

tion. *Id.*, citing *Reyher,* 533 F. 2d at 91 ("Copyrights . . . do not protect thematic concepts or scenes which necessarily must follow from certain similar plot situations.") *Evans v. Wallace Berrie Co., Inc.*, 681 F. Supp. 813, 817 (S.D. Fla. 1988).

In the instant case, the pictures, depicting the hip seat baby carrier, if any, are no more than an idea, which is not protectable under copyright laws. Only the expression of ideas, namely the distinctive expression of ideas are protected by the laws.

*2. Plaintiff Will Not Likely Succeed on Its False Designation of Origin Claim.*

**a. All Claimed Configuration Are Functional and No Color Combination Was Copied.**

Plaintiff claimed that the "distinctive rounded pouch with a logo centered on the front, black wrap around straps with various neutral colors for the outer shell material, and the configuration of the pockets - are non-functional and arbitrary." *See* Plaintiff's Motion for TRO, ECF No. 9, p. 19, ¶ 1. The round pouch is naturally attached to the hip seat, to be utilized as a pocket for baby necessities and wrap shall be a must for wrapping around a person's waist. The rest pockets shall be for milk bottle and napkins, so on and so forth. All such features/configuration are functional.

 

*Figure 4. Defendant Fleerose's Product*



*Figure 5. Plaintiff's Product*

From Figure 4 and 5, it is evident that Defendant Fleerose did not use the color combination of that of Plaintiff. There are obvious difference between the two products, to name a few:

i. Fleerose used dark/black color material for the product and the hip seat and Plaintiff use light grayer his/her product;

ii. Fleerose used black color for the hip seat while Plaintiff used brown or yellowish color;

iii. Fleerose's hip seat is made of small protruding rounded shape dots to add more traction to the hip seat, which is claimed in its patent application No. 29/911,444 and will be issued on April 30, 2024;[4]

iv. Fleerose used a plastic pad as hip seat while Plaintiff used cloth as material for the hip seat;

v. Plaintiff's logo is embroidered onto the cloth, Fleeroe used a rectangular plastic material sewed onto the front pocket.

**b. Plaintiff's Product Design Was Not Distinctive and Defendant Did Not Copy Its Design.**

In *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1189 (11th Cir. 2002), the court explained about trade dress:

> We have no trouble finding that a product's trade dress may fall within the definitions of "advertising idea" or "style of doing business." Trade dress is defined as "the total image of a product and may include features such as size, shape, color or color combinations, textures,

---

[4] *See* Exhibit "E."

graphics, or even particular sales techniques."*John H. Harland Co. v. Clarke Checks, Inc.,*711 F.2d 966, 980 (11th Cir. 1983) (citations omitted). Thus, while "the classic trade dress infringement action involved the packaging or labeling of goods," *Epic Metals,*99 F.3d at 1038, it may "extend to marketing techniques" and can include certain "sales technique[s] designed to make the product readily identifiable to consumers and unique in the marketplace," *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,*684 F.2d 821, 831 (11th Cir. 1982) (finding that the "adoption procedures and birth certificates" given with particular dolls were protectable trade dress).

*Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1189 (11th Cir. 2002).

In *Carillon Importers v. Frank Pesce Group, 913 F. Supp. 1559, 1563 (S.D. Fla. 1996),*

the court explained:

In a trade dress infringement case, likelihood of success on the merits requires proof to a preponderance of the evidence that (1) the trade dress is inherently distinctive or has acquired secondary meaning; (2) it is primarily non-functional; and (3) the defendant's trade dress is confusingly similar. *Bauer Lamp Co. v. Shaffer,*941 F.2d 1165, 1170 (11th Cir. 1991); *AmBrit, Inc. v. Kraft, Inc.,*812 F.2d 1531, 1535 (11th Cir. 1986), *cert. denied,*481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). The last prong of the test is the most important and is also referred to as the "likelihood of confusion." *See AmBrit,*812 F.2d at 1538.

*Carillon Importers v. Frank Pesce Group*, 913 F. Supp. 1559, 1563 (S.D. Fla. 1996). It continued to explain:

Distinctiveness is measured along an increasing scale: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos,*505 U.S. at 767, 112 S.Ct. at 2757 (citation omitted). This characterization adapts the standards for distinctiveness under trademark law to the context of trade dress law. *Id.* Under this approach, to be inherently distinctive the trade dress must be more than merely descriptive. *Two Pesos,*505 U.S. at 767, 112 S.Ct. at 2757. For example, an advertisement with four boxes labeled north, south, east, and west, each containing the locations and phone numbers of different branches of the advertiser in those quadrants of the city, is not inherently distinctive because it is merely descriptive. *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.,*781 F.2d 604, 609 (7th Cir. 1986) (applying the same analysis endorsed in *Two Pesos*); *see also AmBrit,*812 F.2d at 1537 n. 20, 23 (citations omitted). As a rule, the more arbitrary the design, the more inherently distinctive the trade dress.

*Carillon Importers v. Frank Pesce Group*, 913 F. Supp. 1559, 1563 (S.D. Fla. 1996).

In the instant case, similar to the the descriptive advertisement of the boxes example in *Carillon Importers,* the logo of Plaintiff's product is no more than descriptive. The alleged "distinctive rounded pouch with a logo centered on the front"[5] was not an arbitrary design as it is an ancillary part to the hip seat. Placing the logo at the center is not distinctive. Most logos are placed at the center of the front. All the neutral color combination, can not be distinctive."[C]ases in the Eleventh Circuit also evaluate distinctiveness in terms of (1) whether a shape or design is common…." *Id.* The shape of rounded seat for a hip seat baby carrier are commonly rounded because it is comfortable for baby to sit on. Thus, the ancillary pouch shall be of the rounded shape.

"As a matter of policy, color alone is not protected as trade dress, unless it has acquired a secondary meaning." *Id.* Thus, Plaintiff's argument that it selected neutral color for its product did not amount to a trade dress, as the neutral color does not acquire any secondary meaning for a baby hip seat baby carrier. Besides, Fleerose did not adopt the choices of such neutral colors to its products.

Thus, Plaintiff's product design does not meet the criteria of inherent distinctiveness and second meaning.

### c. No Likely Confusion.

Plaintiff concluded that Defendants' product might cause confusion to consumers. However, Plaintiff failed to compare Fleerose's product with Tushbaby in the Motion for TRO [DE 9]. With the analysis above, a reasonable consumer shall not be confused between the two prod-

---

[5] *See* Motion for TRO [DE 9], p. 18, ¶ 1.

ucts, bearing in mind that all hip seat baby carriers look the same, with the clear logo and color combination difference.

### d. Strength of Trade Dress

Given the analysis above, Plaintiff's trade dress, firstly, if any, was infringed by Fleerose. Secondly, the trade dress does not have any inherent distinctiveness and/or second meaning. Thus, it is unlikely Plaintiff will succeed in its claims of trade dress.

**WHEREFORE**, Defendant Fleerose, by and through its counsel undersigned, requests that this Court dissolve the TRO and deny Plaintiff's application to the entry of a preliminary injunction against Fleerose.

Respectfully submitted on April 29, 2024.

/s/ Jianyin Liu
FBN: 1007675
Jianyin Liu, Esq. Attorney
The Law Offices of James Liu, LLC
15750 SW 92nd Ave Unit 20C
Palmetto Bay, FL 33157
Ph: (305) 209 6188
Email: jamesliulaw@gmail.com
Counsel for Defendant Shiaon

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was sent to all parties via CM/ECF on this April 29, 2024.

/s/ Jianyin Liu