UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-21136-JB

**TUSHBABY, INC.,**

    **Plaintiff,**

v.

**THE CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,**

    **Defendants.**

_____/

**[PROPOSED] PRELIMINARY INJUNCTION ORDER
AS TO DEFENDANT SHIAON (DOE NO. 5)**

THIS CAUSE came before the Court upon Plaintiff's Application for Preliminary Injunction (the "Application") (Dkt. 9). Plaintiff TushBaby, Inc. moves for entry of a preliminary injunction order against Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule A, and an entry of an order restraining their financial accounts Defendants, pursuant to 15 U.S.C. § 1125, 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a).

The Court has carefully reviewed the Motion and the record and is otherwise fully advised in the premises. The Court also heard oral argument on the Motion as to Defendant Shiaon (Doe No. 5) ("Defendant") on April 30, 2024. For the reasons set forth herein, Plaintiff's Application as to Defendant Shiaon (Doe No. 5) is **GRANTED**.

**I.**    **Factual Background**

Plaintiff TushBaby, Inc., is the owner of trade dress ("TUSHBABY Trade Dress") and

copyright registrations covered by U.S. Copyright Office Registrations No. VA 2-355-341 and VA 2-360-714 (collectively, the "TUSHBABY Copyrights" or "Plaintiff's Copyrights"), which are valid, and in full force and effect.

The Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be, infringements, reproductions, or colorable imitations of the TUSHBABY Copyrights and/or TUSHBABY Trade Dress. *See* Declaration of Tamara Rant ("Rant Decl.") at ¶¶ 10–17.

Defendant is not now, nor has it ever been, authorized or licensed to use or reproduce TUSHBABY Copyrights and/or TUSHBABY Trade Dress. *See* Rant Decl. at ¶ 23.

The Plaintiff investigated the promotion and sale of infringing versions of the Plaintiff's trade dress and copyright protected products by the Defendant. *See* Rant Decl. at ¶¶ 10–25. Plaintiff accessed Defendant's e-commerce store Shiaon Store, pruchased a product from Shiaon Store, bearing infringements of the TushBaby Copyrights and/or TushBaby Trade Dress at issue in this action, and requested the product to be shipped to an address in the Southern District of Florida. *See id*.; Ex. 2 Rant Decl. (Dkt. 9-3). The Plaintiff conducted a review and visually inspected the item, for which orders were initiated by Plaintiff's third-party investigator, and determined the products were non-genuine, unauthorized versions of the Plaintiff's products. *See id*.

## II. <u>Legal Standard</u>

In order to obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on

2

the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### III.    Conclusions of Law

The evidence Plaintiff submitted in support of its Application for Preliminary Injunction support the following conclusions of law:

A.    Plaintiff has established a substantial likelihood of success on the merits for its copyright claim (17 U.S.C. § 101 et seq.). To prove copyright infringement, the Plaintiff must show (1) "ownership of a valid copyright," and (2) the "copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). First, Plaintiff has shown it owns all exclusive rights in various copyrights for the TUSHBABY Products. Rant Decl., ¶ 4.

B.    Second, Plaintiff has shown that Defendant has made unauthorized copies of Plaintiff's works. Specifically, Defendant deceives unknowing consumers by using the TUSHBABY Copyrights without authorization, including by offering products for sale by reference to those copyrights on the Shiaon Store. Rant Decl., ¶¶ 21, 23. As a visual representation, Defendant has directly copied Plaintiff's copyrights for the TUSHBABY Products, or, alternatively, Defendant's representations of Plaintiff's copyrights for the TUSHBABY products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrights for the TUSHBABY Products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the TUSHBABY products. For example, Defendant deceives unknowing consumers by using the

TUSHBABY copyrights without authorization as follows:



C. Plaintiff has shown a strong likelihood of success on its false designation of origin (trade dress) claim under 15 U.S.C. § 1125. A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a valid, protectable trademark or trade dress; and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615

4

(1992). To have protectable trade dress, TushBaby must show: (1) that its trade dress is either inherently distinctive or has acquired secondary meaning in the marketplace; (2) that the features of its trade dress are primarily nonfunctional; and, (3) that the trade dress of the infringing products is confusingly similar. 15 U.S.C. § 1125(a); *AmBrit, Inc.* v. *Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir. 1986). Trade dress is protectable under the Lanham Act if it is primarily nonfunctional and is either inherently distinctive or has acquired secondary meaning. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (9th Cir. 1987). To determine whether an element or design is nonfunctional, the court can consider the following factors: whether a particular design is superior, whether there are alternative trade dress configurations available, and whether a particular design is comparatively simple or cheap. Callaway Golf, 915 F. Supp. at 1213 (citing Jsaly Co. v. Kraft, Inc., 619 F. Supp. 983, 991 (M.D. Fla. 1985)).

      D.      Plaintiff has shown it has a valid trade dress. TushBaby's trade dress consists of the overall design of the product, which features a distinctive rounded pouch, a logo centered at the front, wrap around straps, neutral colors for the outer shell, and the configuration of the size zipper and mesh pockets. The trade dress is primarily nonfunctional. The shape of the rounded pouch and centered logo is unnecessary and simply there for aesthetic purposes serving only to aid in giving the product its distinctive look. *See, e.g.*, *AmBrit*, 812 F.2d at 1536 (finding the foil wrapper of a Klondike bar to be suggestive of the "coldness of the product" and thus inherently distinctive based on the color and design of the wrapper). The configuration of the pockets and materials, such as the mesh, are arbitrary and could be changed without changing functionality. As discussed below, the trade dress of the infringing products is confusingly similar.

      E.      Plaintiff has also shown that Defendant's use of the TUSHBABY Trade Dress is likely to confuse customers about the source of the products. *Nane Jan*, 2014 WL 5177655, at *2

(citing *Custom Mfg.*, 508 F.3d at 647-48). The Eleventh Circuit considers the following factors in determining whether a likelihood of confusion exists: (1) the strength of the trade dress, (2) the similarity of design, (3) the similarity between the products offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, including whether the defendants hope to gain competitive advantage by associating his product with the plaintiff's established trade dress; and (7) actual confusion." *Tardieu Grp., Inc. v. MEC Apparel Grp., Inc.*, No. 09-20408-CIV, 2009 WL 10667537, at *3 (S.D. Fla. May 5, 2009) (citing AmBrit, 812 F.2d at 1538). Because the inquiry is case-specific, the court is not required to consider every factor, but only those that are relevant to the case at hand. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 & n.17 (11th Cir. 1983). The determination does not require that a majority of the factors favor confusion, if the overall circumstances tend to establish confusion. *Id.*

  F. Plaintiff's longtime use, industry recognition, significant advertising expenditures, and large volume of sales have strengthened the trade dress. *See Home & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1260 (M.D. Fla. 2009) (citing John H Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 975 n. 13 (11th Cir. 1983)). Plaintiff has been using its trade dress for years and has been substantially marketing it since its launch in 2018. Rant Decl. ¶ 7. The TUSHBABY Trade Dress has been prominently marketed nationally, including on Shark Tank, and received praise and recognition from media outlets, including Forbes Magazine, Buzzfeed, and Insider, and has also received the Mom's Choice Award. Decl. ¶¶ 5–8.

  G. In determining the similarity of the trade dress, the court compares the trade dress and considers "the overall impressions that the [trade dress] create, including the sound, appearance, and manner in which they are used." *Frehling Enters., Inc. v. Int'l Select Group,*

6

*Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999) (internal citation omitted). The defining characteristics of the TUSHBABY hip seat baby carrier are the TUSHBABY Logo centered on a rounded front pouch, black wraparound straps, a variety of neutral colors for the outer shell material, and the configuration of side zipper and mesh pockets. Defendant is advertising its product with trade dress that is *identical*, or at least substantially similar, to the TUSHBABY Trade Dress. The overall impression created by Defendant's design, as advertised, is identical, or at the very least substantially similar, to the overall impression created by the TUSHBABY Trade Dress. Defendant misappropriates every nonfunctional detail of TushBaby's product in advertising its product. Because Defendant's trade dress is identical, if not nearly identical, this factor weighs heavily in favor of TushBaby. herehere

H.   A high degree of similarity between sales methods and use of the same advertising media increases the likelihood of confusion. *Suzuki Motor Co. v. Jiujiang Hison Motor Boat Mfg. Co.*, No. 1:12-cv-20626, 2012 WL 640700, at *3 (S.D. Fla. Feb. 27, 2012). Here, both TushBaby and Defendant use the Internet and Internet Marketplaces, such as Amazon.com, to market their products and use similar, if not identical, images to advertise their products. This factor also weighs strongly in TushBaby's favor.

I.   Plaintiff has shown a strong likelihood that consumers are likely to be confused by Defendant's advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using infringements, reproductions, or colorable imitations of the TUSHBABY Copyrights and/or TUSHBABY Trade Dress, and that the products Defendant is selling and promoting for sale are copies of Plaintiff's respective products that bear and/or use copies of TUSHBABY Copyrights and/or TUSHBABY Trade Dress.

J.   The evidence of Defendant's intent to deceive customers is strong. "If it can be

7

shown that a defendant adopted a plaintiffs mark with the intention of deriving a benefit from the plaintiffs business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling,* 192 F.3d at 1340. Defendant's copying of Tushbaby's trade dress raises an inference that Defendant intended to benefit from Tushbaby's reputation to Tushbaby's detriment. *See Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Fl,* 546 F. Supp. 987, 996 (S.D. Fla. 1982). The only possible conclusion is that Defendant has intentionally misappropriated the TUSHBABY Trade Dress to derive a benefit from TushBaby's reputation and goodwill. This factor weighs strongly in TushBaby's favor.

K.   Plaintiff's TUSHBABY Trade Dress is valid and protectable, and Plaintiff has established a likelihood of success on the merits of its trade dress infringement claim against Defendant—which, as discussed *supra* require a showing of likelihood of confusion—a likelihood of success on the merits for Plaintiff's false designation of origin claim has likewise been established

L.   Whether a defendant's use of a plaintiff's trade dress creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims.").

M.   Additionally, the analysis of liability for Florida common law trade dress infringement is the same as the analysis of liability for trade dress infringement under the Lanham Act. *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004); *see also* Conair Corp. v. K & A Beauty, LLC, No. 6:14-CV-920-CEM-TBS, 2014 WL 4385635, at *4 (M.D. Fla. Sept. 4, 2014) (upholding Florida courts recognition that a common-law unfair

competition claim for trade dress infringement has the same elements as a federal trade dress infringement claim under § 43(a) of the Lanham Act.). Plaintiff has satisfied the elements of its trade dress infringement claim against Defendant, establishing that a likelihood of confusion exists. Therefore, Plaintiff is also likely to succeed on the merits of its corresponding common law claims.

N. Because of the infringement of TUSHBABY Copyrights and/or TUSHBABY Trade Dress, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers unless Plaintiff's request for injunctive relief is granted:

1. Defendant owns or controls an e-commerce store and commercial Internet website operating under its respective seller identification name and domain name which advertise, promotes, offers for sale, and sells products bearing and/or using infringing copyrights and trade dress in violation of Plaintiff's respective rights;

2. There is good cause to believe that more infringing products bearing and/or using Plaintiff's copyrights and trade dress will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

3. There is good cause to believe that Defendant can easily and quickly change the ownership or modify domain registration, e-commerce store, and private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names, private messaging accounts, and domain names, and transfer assets and ownership of the

seller identification names and domain names, thereby thwarting Plaintiff's ability to obtain meaningful relief.

O.    The balance of potential harm to Defendant in restraining their trade in infringing branded goods if a preliminary injunction order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

P.    The public interest favors issuance of the preliminary injunction order to protect Plaintiff's copyright interests and protects the public from being defrauded by the palming off of infringing goods as Plaintiff's genuine goods.

Q.    Under 15 U.S. Code § 1125, 15 U.S.C. § 1117(a) and 17 U.S.C. §504(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendant's distribution and sales of goods bearing and/or using infringements of Plaintiff's Copyrights and/or Trade Dress. *See, e.g.*, *SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to freeze all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

R.    Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

S.　In light of the inherently deceptive nature of the infringement business, and the likelihood that Defendant has violated federal copyright and trade dress laws, Plaintiff has good reason to believe Defendant will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

T.　Upon review of Plaintiff's Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions, it is hereby ORDERED that Plaintiff's Motion is **GRANTED**, according to the terms set forth below:

## PRELIMINARY INJUNCTION

(1)　Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby temporarily restrained as follows:

　　a.　From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Plaintiff's Copyrights and/or Trade Dress, other than those actually manufactured or distributed by Plaintiff; and

　　b.　From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing Plaintiff's Copyrights and/or Trade Dress; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiff's Copyrights; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by Defendant.

　　c.　Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Plaintiff's Copyrights; and

> d. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (c).

(2) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Copyrights and/or Trade Dress on or in connection with all Internet based e-commerce stores and Internet websites owned and operated, or controlled by them, including the Internet based e-commerce stores and Internet websites operating under the Seller IDs and Subject Domain Names;

(3) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Copyrights and/or Trade Dress within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores and Internet websites registered, owned, or operated by Defendant, including the Internet based e-commerce stores and Internet websites operating under the Seller IDs and Subject Domain Names;

(4) Defendant shall not transfer ownership of the Internet based e-commerce stores and Internet websites operating under its Seller IDs and Subject Domain Names during the pendency of this action, or until further order of the Court;

(5) Defendant shall preserve copies of all computer files relating to the use of any of the Internet based e-commerce stores and Internet websites operating under its Seller IDs and

Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Internet based e-commerce stores and Internet websites operating under its Seller IDs and Subject Domain Names that may have been deleted before the entry of this Order;

(6) The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order or prior to expiration of this Order, whichever date shall occur first, shall disable any Defendant Domain Names and make them inactive and untransferable until further ordered by this Court;

(7) Those with actual notice of this Order, including any online marketplaces such as the Online Marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

    a. disable and cease providing services for any accounts through which Defendant engages in the sale of infringing goods directly or indirectly infringing the Plaintiff's Copyrights, including any accounts associated with the Defendant;

    b. disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of infringing goods directly or indirectly infringing the Plaintiff's Copyrights and/or Trade Dress; and

    c. take all steps necessary to prevent links to the Defendant's Domain Names identified on the attached Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

(8) Defendant and any third party with actual notice of this Order who is providing services for Defendant, or in connection with any of Defendant's websites at the Defendant

Domain Names or other websites operated by Defendant, including, without limitation, any online marketplace platforms such as the online marketplace platforms, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers, including PayPal, Alipay, Wish, Walmart, Joom, Alibaba, Ant Financial, Amazon, DHgate, eBay, Payoneer, PingPong, Coinbase, LianLian, AllPay, Union Mobile, World First, Paxful, Shopify, Stripe, OFX, SellersFund, third party processors and other payment processing service providers, shippers, and domain name registrars (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Plaintiff expedited discovery—based on the identifying information provided by Plaintiff's counsel including but not limited to, account IDs, legal names, and associated email addresses— including copies of all documents and records in such person's or entity's possession or control relating to:

      a.     the identities and locations of Defendant, its agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

      b.     the nature of Defendant's operations and all associated sales and financial information, including, without limitation, identifying information associated with Defendant's online marketplace accounts, the Defendant Domain Names, and Defendant's financial accounts, as well as providing a full accounting of Defendant's sales and listing history related to their respective online marketplace accounts and Defendant Domain Names;

      c.     Defendant's websites and/or any online marketplace accounts;

      d.     the Defendant Domain Names or any domain name registered by Defendant; and

e. any financial accounts owned or controlled by Defendant, including its agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, without limitation, PayPal, Alipay, Wish, WalMart, Joom, Alibaba, Ant Financial, Amazon Pay, DHgate, eBay, Payoneer, PingPong, Coinbase, LianLian, AllPay, Union Mobile, World First, Paxful, Shopify, Stripe, OFX, SellersFund or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

(9) Defendant and any persons in active concert or participation with it who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendant's assets until further ordered by this Court.

(10) Western Union shall, within five (5) business days of receipt of this Order, block any Western Union money transfers and funds from being received by Defendant until further ordered by this Court.

(11) The marketplace platforms shall, within five (5) business days of receipt of this Order, for Defendant or any of Defendant's online marketplace accounts or websites:

a. locate all accounts and funds connected and/or related to Defendant, Defendant's online marketplace accounts or Defendant's websites, including, but not limited to, any Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, eBay, Walmart, and Wish accounts connected and/or related to the information listed in the attached Schedule A; and

b. Restrain and enjoin any such accounts or funds from transferring or

disposing of any money or other of Defendant's assets until further ordered by this Court.

(12) The Financial Institutions, any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendant's online marketplace accounts or websites, shall within five (5) business days of receipt of this Order:

    a. locate all accounts and funds connected and/or related to Defendant, Defendant's online marketplace accounts or Defendant's websites, including, but not limited to, any accounts connected and/or related to the information listed in Schedule A to this Order; and

    b. restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendant's assets until further ordered by this Court.

(13) The five thousand dollar ($5,000.00) bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Preliminary Injunction is terminated.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of April 2024.

_____
**HONORABLE JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**

Copies provided to:
Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-21136-Civ-Becerra

**TUSHBABY, INC.,**

    **Plaintiff,**

v.

**THE CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,**

    **Defendants.**

_____/

**Schedule A**

| Doe No. | Defendant Seller | Defendant Online Marketplace |
|---|---|---|
| ■ | ■■■■■ | ■■■■■■■■■■ |
| ■ | ■■■ | ■■■■■■■■■■ |
| ■ | ■■■■■ | ■■■■■■■■■■ |
| ■ | ■■■■ | ■■■■■■■■■■ |
| 5. | Shiaon | https://www.amazon.com/sp?seller=AZA2A6JHZ819M |
| ■ | ■■■ | ■■■■■■■■■■ |