## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TUSHBABY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Case No.: 24-cv-21136 |

## DECLARATION OF TAMARA RANT

I, Tamara Rant, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I make this declaration in support of Plaintiff's Motion for Entry of a Temporary Restraining Order, including temporary restraints and other relief.

3. I am the founder and CEO of TUSHBABY, Inc. ("TUSHBABY") and am knowledgeable about or have access to business records concerning key aspects of the brand protection operation of TUSHBABY, including, but not limited to, copyrights, trademarks, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge unless stated otherwise.

4.  TUSHBABY owns all exclusive rights in various copyrights for the TUSHBABY products, including without limitation copyrights covered by U.S. Copyright Office Registrations Nos. VA 2-355-341, VA 2-360-715, VA 2-360-714, VAu 1-511-350, VA 2-360-713, VAu 1-511-354, VAu 1-511-372, and VAu 1-508-280 (collectively, the "TUSHBABY Copyrights"). True and correct copies of the federal copyright registration certificates for the TUSHBABY Copyrights are attached hereto as **Exhibit 1**.

5.  TUSHBABY is a leading infant carrier manufacturer and distributor, and has earned an international reputation for quality, reliability, and value. TUSHBABY is the official source of TUSHBABY products in the United States.

6.  TUSHBABY's premier product is the TUSHBABY Hip Seat Carrier ("the TUSHBABY Carrier"), launched in 2018, which bears unique and distinctive trade dress which consists of the overall design and configuration of the product. TUSHBABY has since developed more innovative and ground-breaking products. TUSHBABY Products comply with all of the U.S. Consumer Product Safety Commission's federal product safety regulations and are approved and verified through Société Générale de Surveillance ("SGS") testing to comply with global safety standards.

7.  Since at least 2018, the TUSHBABY Products have been the subject of substantial and continuous marketing and promotion by TUSHBABY, including by way of the TUSHBABY Trade Dress and the TUSHBABY Copyright Registrations. TUSHBABY has and continues to widely market and promote TUSHBABY Products in the industry and to consumers globally. TUSHBABY'S promotional efforts include — by way of example but not limitation — a feature on famous television show *Shark Tank* on ABC, substantial print media, the TUSHBABY Products' website and social media site, and point of sale materials, all of which featuring at least a portion of the TUSHBABY Copyright Registrations and TUSHBABY Trade Dress.

8.      TUSHBABY has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the TUSHBABY Trade Dress and TUSHBABY Copyright Registrations and total revenue of products bearing the TUSHBABY Trade Dress is approximately $33 million. The TUSHBABY Hip Seat Carrier received the Mom's Choice Award in 2022 and TUSHBABY has received praise and recognition from notable publications including *Buzzfeed*, *Forbes Magazine*, and *New York Magazine*. In fact, coverage of the TUSHBABY Products by *Insider* garnered over 50 million views. The TUSHBABY Hip Seat Carrier has been heavily and widely promoted throughout the United States and the world and has been the subject of extensive third-party press and unsolicited media coverage on social media, particularly TikTok. Influencers with millions of followers in the aggregate have posted and shared glowing reviews and tutorials featuring the TUSHBABY Trade Dress. The extensive and widespread social media coverage has brought the TUSHBABY Trade Dress to a global audience beyond the U.S. consumer. As a result, products bearing the TUSHBABY Trade Dress and TUSHBABY Copyrights are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from TUSHBABY.

9.      The success of TUSHBABY Products has resulted in significant infringement of the intellectual property rights subsisting in and associated with those products, including the TUSHBABY Trade Dress and TUSHBABY Copyright Registrations.

10.     Consequently, TUSHBABY has implemented an anti-infringement program and is investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps as part of that program. TUSHBABY has identified numerous e-commerce merchant accounts linked to fully interactive websites and marketplace listings on platforms including but not limited to Amazon.com ("Amazon") (the "Marketplace Platforms").

11.     Through TUSHBABY's investigation, we have learned of Defendants' sale of

products on at least the Marketplace Platforms that appear to be genuine TUSHBABY products, but which are actually inferior and unauthorized imitations of the TUSHBABY products offered at a price equal to less than half of the market rate for a genuine TUSHBABY Carrier (the "Infringing Products"). Indeed, the Infringing Products are marketed by reference to and/or embody works that are strikingly similar, or at the very least substantially similar to the TUSHBABY Trade Dress and TUSHBABY Copyrights.

12. The Defendants' online marketplace pages on the Marketplace Platforms, identified on Schedule A ("Defendant Internet Stores"), share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

13. Despite TUSHBABY's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores and engaging in continued sales of the Infringing Products.

14. For example, to date, TUSHBABY's investigation of Defendants reveals that Defendants are using the Defendant Internet Stores to sell Infringing Products from foreign countries such as China (and elsewhere) to consumers in the U.S., including consumers in Florida.

15. I have directly (or someone working under my supervision has) analyzed each of the Defendant Internet Stores and determined that Infringing Products were being offered for sale to the United States, including this Judicial District.

16. This conclusion was reached through visual inspection of the products listed for sale on the website, in which we confirmed:

    a. The Infringing Products are marketed by reference to and/or embody works that are strikingly similar, or at the very least substantially similar to the TUSHBABY Trade Dress and TUSHBABY Copyrights;

  b. Each Defendant Internet Store accepts payment in U.S. Dollars;

  c. When initiating the purchase process of an Infringing Product from each of the Defendant Internet Stores, each Defendant allows products to be shipped to the Southern District of Florida.

 17. True and correct copies of representative screenshot printouts from the Defendant Internet Stores, as well as pages confirming the ability to order and ship Infringing Products to Florida are collectively attached as **Exhibit 2**.  More specifically, Exhibit 2 also contains proof of order placed and accepted by the Defendant Internet Stores for sale of Infringing Products to the Southern District of Florida.

 18. We also confirmed that Defendants' seller names (identified in Schedule A) are not associated with any legitimate registered business. Moreover, most Defendants fail to disclose accurate and complete contact information on the Marketplace Platforms.

 19. To the best of our knowledge, Defendants and their websites do not conduct business with TUSHBABY and do not have the right or authority to use the TUSHBABY Trade Dress and the TUSHBABY Copyrights for any reason. We have no reason to believe that any of the Defendants are authorized resellers of any genuine TUSHBABY products.

 20. Upon information and belief, defendants like the Defendants in this case regularly rely on and use the e-mail addresses that the Defendants provide to the Marketplace Platforms and other third-party payment processers in order to communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from the Marketplace Platforms and third-party payment processers is often the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of products that infringe intellectual property rights.

 21. Upon information and belief, Defendants typically facilitate sales by designing the

Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine TUSHBABY products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon, and PayPal.

22. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

23. TUSHBABY has not licensed or authorized Defendants to use the TUSHBABY Trade Dress and the TUSHBABY Copyrights, and none of the Defendants are authorized retailers of genuine TUSHBABY products.

24. Upon information and belief, Defendants typically use unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine TUSHBABY products.

25. Upon information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the merchant accounts operating the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses. Such Defendant Internet Store

registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their online intellectual property infringement operation, and to avoid being shut down.

26. Despite operating under multiple fictious names, there are similarities among the Defendant Internet Stores. For example, Infringing Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features including use of the same accepted payment methods, check-out methods, illegitimate SEO tactics, lack of contact information, identically or similarly priced items, and the use of the same text and images.

27. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online intellectual property infringers use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Intellectual property infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Intellectual property infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

28. Based on my experience in investigating products that infringe intellectual property rights, including the instant investigation, infringers such as Defendants typically operate multiple credit card merchant accounts as well as PayPal, and other third-party payment processing accounts behind layers of payment gateways so that they can continue operation in spite of

7

TUSHBABY's enforcement efforts. Further, Defendants typically maintain off-shore bank accounts and regularly move funds from their PayPal and other third-party payment processing accounts to off-shore bank accounts outside the jurisdiction of this Court.

29. Monetary damages alone cannot adequately compensate TUSHBABY for ongoing infringement because monetary damages fail to address the loss of control of and damage to TUSHBABY'S reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to TUSHBABY's reputation and goodwill by acts of infringement.

30. TUSHBABY'S goodwill and reputation are irreparably damaged when the TUSHBABY Trade Dress and the TUSHBABY Copyright Registrations are used in respect of goods not authorized, produced, or manufactured by TUSHBABY. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to TUSHBABY's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

31. TUSHBABY is further irreparably harmed by the unauthorized use of the TUSHBABY Trade Dress and the TUSHBABY Copyrights because infringers take away TUSHBABY's ability to control the nature and quality of products marketed by reference to and/or embodying the infringing and unauthorized versions of the TUSHBABY Trade Dress and the TUSHBABY Copyrights. TUSHBABY's products, including the TUSHBABY Hip Seat Carrier, comply with all mandatory federal product safety regulation set forth by the U.S. Consumer Product Safety Commission and are approved in accordance with global safety standards and verified through SGS testing. Loss of quality control over goods marketed by reference to and/or embodying the infringing TUSHBABY registrations and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

32. The sale of Infringing Products marketed by reference to and/or embodying the TUSHBABY Trade Dress and the TUSHBABY Copyrights causes consumer confusion, which weakens TUSHBABY's brand recognition and reputation. Consumers who mistakenly believe that the Infringing Products they have purchased originated from TUSHBABY will come to believe that TUSHBABY offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine TUSHBABY products, resulting in a loss or undermining of TUSHBABY's reputation and goodwill.

33. TUSHBABY is further irreparably damaged due to a loss of exclusivity. The TUSHBABY products are meant to be exclusive. TUSHBABY's extensive marketing and distribution of TUSHBABY products as part of its various marketing activities are aimed at growing and sustaining sales of TUSHBABY products. The TUSHBABY Trade Dress and the TUSHBABY Copyrights signify to consumers that the TUSHBABY products originate from Plaintiff and are manufactured to high quality standards. When intellectual property infringers use any of the TUSHBABY registrations in respect of goods without TUSHBABY's authorization, the exclusivity of TUSHBABY's products, as well as TUSHBABY's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

34. TUSHBABY will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Executed on __10_____, 2024 in Walnut Creek, California.

_____
Tamara Rant (May 10, 2024 18:36 PDT)
Tamara Rant