**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:24-cv-21136-LEIBOWITZ/TORRES

TUSHBABY, INC.,

    Plaintiff,

v.

FLEEROSE, a Foreign Corporation,

    Defendant.

_____/

**MOTION TO DISMISS DEFENDANT FLEEROSE'S COUNTERCLAIMS**

Plaintiff Tushbaby, Inc. ("Plaintiff") hereby requests that this Court dismiss Defendant Fleerose's ("Defendant") counterclaims in their entirety [*see* ECF No. 90, at 24] (the "Counterclaims") and state as follows:

## I.  INTRODUCTION

Defendant's Counterclaims seek to invalidate Plaintiff's trade dress and copyright rights on the basis that the features thereof purportedly overlap with features that were claimed in an application for a utility patent filed by a third party. However, Defendant neglects to allege any factual basis to support its claims, resting instead on vague and conclusory allegations. Nor could it, given that the patent application, on its face, establishes that Defendants' Counterclaims are facially deficient, and that there are no facts to support a claim upon which relief can be granted. Defendant's Counterclaims should therefore be dismissed with prejudice.

## II.  RELEVANT ALLEGATIONS

Plaintiff is a leading manufacturer and distributor of infant carriers. *See* Plaintiff's Second Amended Complaint [ECF No. 84] (the "SAC"), ¶ 14. Plaintiff's flagship product, the

1

TUSHBABY Hip Seat Baby Carrier (the "TUSHBABY Carrier" or "Plaintiff's Carrier"), bears unique and distinctive trade dress, which has been registered with the U.S. Patent and Trademark Office (the "TUSHBABY Trade Dress" or "Plaintiff's Trade Dress").[1] *See* SAC, ¶ 2, Ex. 2. Plaintiff is also the owner of various copyrights in and to expressive content related to the TUSHBABY Carrier, which has been registered with the U.S. Copyright Office (the "TUSHBABY Copyrights" or "Plaintiff's Copyrights").[2] *See* SAC, ¶¶ 1, 15, Ex. 1. The success of Plaintiff's Carrier has resulted in significant infringement of Plaintiff's corresponding intellectual property rights.

Plaintiff filed this action against Defendant on March 25, 2024, because Defendant owns and operates an e-commerce business dedicated to infringing Plaintiff's rights and trading off of its goodwill. Since at least 2023, if not earlier, Defendant has been selling, offering for sale, marketing, distributing, and advertising unauthorized products which utilize the TUSHBABY Trade Dress wholesale in order to trade upon Plaintiff's goodwill and reputation (the "Infringing Products"), in violation of Plaintiff's trademark rights under the Lanham Act, 15 U.S.C. §§ 1114 & 1125. *See* SAC, ¶¶ 23, 33. Defendant furthermore directly copied protectable expression from Plaintiff's copyrighted marketing imagery to market its Infringing Products, in furtherance of its unlawful and deceptive conduct, violating Plaintiff's exclusive copyright rights in the TUSHBABY Copyrights. *See* 17 U.S.C. § 106. *See* SAC, ¶ 33.

On September 16, 2024, Defendant filed its Answer & Counterclaims to the SAC [ECF No. 90], alleging two causes of action. *First*, under Counterclaim I, Defendant is seeking a judicial

---

[1] The TUSHBABY Trade Dress is covered by U.S. Patent and Trademark Office Registration No. 7,489,071.
[2] The TUSHBABY Copyrights are covered at least by U.S. Copyright Office Registration Nos. VA 2-360-714, VA 2-360-713, VAu 1-511-372, and VA 2-395-564.

declaration invalidating Plaintiff's trade dress on the alleged basis that the trade dress purportedly copies from a published patent application, Pub. US2016/0286980 A1 ("the '028 Patent Application")[3], and that "all of [the alleged] features" of the TUSHBABY Trade Dress "were claimed as functional" in the '028 Patent Application. Counterclaims, ¶ 11.[4] Defendant does not plead any facts to support these conclusions, resting instead on an apparent comparison of three images of the TUSHBABY Carrier, on one hand, and two figures from the '028 Patent Application, on the other hand. Counterclaims ¶¶ 5-6. *Second*, under Counterclaim II, Defendant is seeking a judicial declaration invaliding the copyrights in certain of the images that form the TUSHBABY Copyrights on the alleged basis that the images purportedly copy the '028 Patent Application, and that "all of [the alleged] features" of the images "were claimed as functional" in the '028 Patent Application. Counterclaims, ¶ 16. Again, Defendant pleads no facts to support these conclusions, apparently resting on its comparison of the three photographs of the TUSHBABY Carrier to two black-and-white drawings depicted in the '028 Patent Application.

### III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complainant must allege facts that, accepted as true, are sufficient to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is appropriate where, accepting the pleaded facts

---

[3] Defendant's allegations refers to the '028 Patent Application as a "utility patent," implying that it is a registration certificate, but the referenced number cited by Defendant refers to a patent application which was published on October 6, 2016. See Declaration of Leo M. Lichtman submitted herewith ("Lichtman Decl.") ¶ 3, Ex. 1.

[4] Though Defendant alleges that the claimed features of Plaintiff's trade dress are "straps, rounded pouch, size zipper and mesh pockets," Counterclaims ¶ 7, Counterclaim I appears to seek an order invalidating the federal trade dress *registration* that Plaintiff obtained, *see* Counterclaims ¶ 3. That registration specifically covers the three-dimensional configuration of "a pocket and a flap." *See* SAC Ex. 2.

as true, there is a dispositive legal issue that precludes relief. *Neitze v. Williams*, 490 U.S. 319, 326 (1989); *see also Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 920 (11th Cir. 2012) (dismissal appropriate where "the plaintiff can prove no set of facts that would support the claims in the complaint"). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Lewis v. Fannie Mae*, 2022 U.S. App. LEXIS 4177, at *4 (11th Cir. Feb. 15, 2022).

Courts at the motion to dismiss stage consider the complaint in its entirety, including any documents appended to the complaint or "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Quinonez v. United States*, 2023 U.S. Dist. LEXIS 26611, at *3 (S.D. Fla. Feb. 15, 2023). Courts may also take judicial notice of undisputed facts at the motion to dismiss stage, including relevant public documents. Fed. R. Evid. 201; *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) (taking judicial notice of documents filed with the SEC). This includes documents filed with the U.S. Patent and Trademark Office (the "USPTO"). *See, e.g., Domond v. PeopleNetwork Aps*, 2017 U.S. Dist. LEXIS 94001, at *4 n.1 (S.D. Fla. June 16, 2017) (taking judicial notice of records from the U.S. Patent and Trademark Office); *Edge Sys. LLC v. Aguila*, 2015 U.S. Dist. LEXIS 145268, at *9 n.5 (S.D. Fla. Jan. 29, 2015) (taking judicial notice of a patent on file with the USPTO); *see also Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) ("It is also well-established that a court may take judicial notice of patents or patent applications").

## IV. ARGUMENT

Defendant's Counterclaims fail because Defendant does not—and cannot—articulate any factual or legal basis to invalidate Plaintiff's registered trade dress and copyrights. To the contrary, the '028 Patent Application—on which Defendant's Counterclaims rely—establish that there are no facts Defendant could plead which would warrant the relief Defendant seeks. Accordingly, Defendant's Counterclaims should be dismissed with prejudice.

### A. COUNTERCLAIM I SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE '028 PATENT APPLICATION, ON ITS FACE, CONTRADICTS DEFENDANT'S ALLEGATIONS

Defendant's Counterclaim I, which seeks a judicial order declaring the TUSHBABY Trade Dress invalid, rests on the proposition that the features of the TUSHBABY Trade Dress were allegedly copied from and overlap with the claimed features in the '028 Patent. But even a cursory review of the '028 Patent demonstrates that this is not true.

At the outset, Plaintiff's registration for the TUSHBABY Trade Dress specifically covers the three-dimensional configuration of "a pocket and a flap", as depicted below, *see also* SAC Ex. 2:



This is a design that is unique to Plaintiff's Carrier, and, as the USPTO acknowledged when it issued a registration, it is a presumably valid and non-functional. *See* 15 U.S.C. § 1115(a) ("Any registration… of a mark registered on the principal register… shall be prima facie evidence of the validity of the registered mark…"); *see Nailtiques Cosmetic Corp. v. Salon Scis. Corp.*, 1997 U.S. Dist. LEXIS 4662, at *6 (S.D. Fla. Jan. 9, 1997) (presumption of validity applies to registered trade dress).

By contrast, the '028 Patent Application, which was filed by ERGO Baby Carrier, Inc., Lichtman Decl. Ex. 1, relates to an alternative hip carrier design. The front pocket and clasp on their face look markedly different, given that the flap in the TUSHBABY Trade Dress is crescent or oblong in shape and covers nearly half of the pocket, whereas the flap in the '028 Patent is a narrow rectangle contained to the top portion of the carrier. *See* Lichtman Decl. Ex. 1, Fig. 6, Fig. 10B, Fig. 11D. Additionally, while the TUSHBABY Trade Dress includes a single snap closure, centered in the middle of the rounded flap with a label affixed above the snap, the '028 Patent Application depicts a carrier with two snaps on either side of the rectangular flap with no label. *See* Lichtman Decl. Ex. 1, Fig. 6, Fig. 10B, Fig. 11D.

Critically, Defendant does not actually allege which of the features in the registered TUSHBABY Trade Dress were claimed as functional in the '028 Patent Application. Nor can it. The claimed features in the '028 Patent Application look completely different because they serve completely different functions that do not even exist on the TUSHBABY Carrier.

*First*, the front pocket **635** on the '028 Patent Application serves the function of "receiving hip seat insert **100** thru insert pocket flap **646**." Lichtman Decl. Ex. 1, at 5 [¶ 0076]. This removable seat insert is depicted in Fig. 2:



FIG. 2

By contrast, Plaintiff is not claiming a pocket for inserting or removing the carrier's seat insert in its trade dress, *see* SAC Ex. 2. In fact, the TUSHBABY Carrier *does not even have a removable seat insert*.[5] The Counterclaims do not allege otherwise.

*Second*, the two snaps on the '028 Patent Application are "hip/waist belt portion press-fit snaps **642** or **640**" which snap into a separate "support flag press-fit snaps **655**" for the purpose of mechanically attaching the "hip seat carrier **500** with torso support portion **650**." Lichtman Decl. Ex. 1, at 6 [¶ 0081]. This is "generally depicted in Fig. 7" and further illustrated by Fig. 8, which are shown below:

---

[5] *See* https://tushbaby.com/products/tushbaby?variant=15109665390658 for information about the design of Plaintiff's product. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805 (11th Cir. 2015) (affirming that the district court properly took judicial notice of newspaper articles and advertisements for the purposes of a Rule 12(b)(6) motion to dismiss); *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1262 n.21 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006) (taking judicial notice of defendant company's website).

7



Once again, Plaintiff is not claiming dual "press-fit snaps" for fastening an extra torso support as part of its trade dress, SAC Ex. 2, because those features do not even exist on the TUSHBABY Carrier. The Counterclaims contain no allegations to suggest otherwise.

Given that Defendant fails to plausibly allege any facts to support invaliding the TUSHBABY Trade Dress registration, and given that the '028 Patent Application, on its face forecloses Defendant's legal theory for doing so, the Court should dismiss Defendant's Counterclaim I with prejudice.

**B. COUNTERCLAIM II SHOULD BE DISMISSED WITH PREJUDICE BECAUSE DEFENDANT FAILS TO PLAUSIBLY ALLEGE A FACTUAL BASIS FOR INVALIDATING PLAINTIFF'S COPYRIGHTS**

Defendant's Counterclaim II seeks to invalidate registered TUSHBABY Copyrights in the below photographic and visual works used to advertise and promote Plaintiff's Carrier (the "Images" or "Plaintiff's Images"):




*U.S. Copyright Office Registration No. VA 2-360-714*

*U.S. Copyright Office Registration No. VA 2-395-564*

As with Counterclaim I, Counterclaim II rests on conclusory assertions, namely that these Images were allegedly copied from the '028 Patent Application, and were "claimed as functional" in the '028 Patent Application. Defendant alleges no facts to plausibly support these conclusions, which are in any event demonstrably false, including for the reasons explained above. However, even if there was some semblance of truth to Defendant's conclusory assertion that the Images above were somehow copied from black-and-white drawings and "claimed as functional" in a patent application, it would still not rebut the presumption of validity afforded to the TUSHBABY Copyrights.

1. **Plaintiff's Copyright Registrations Serve as Prima Facie Evidence that the Images are Valid and Protectable**

At the outset, the Images at issue are original, creative pictorial and graphic works, duly registered with the U.S. Copyright Office, and presumptively valid. 17 U.S.C. § 410(c). The Copyright Act provides that a certificate of registration in copyrighted work made within five years of the work's first publication constitutes prima facie evidence of the copyright's validity. 17 U.S.C. § 410(c). Once a plaintiff produces a certificate of registration made within five years of the work's first publication, the burden then shifts to the defendant to prove that the copyrighted

9

work is invalid. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

Even certificates of registration made more than five years after the work's first publication can still serve as prima facie evidence of their validity, and it is within the court's discretion to determine the evidentiary weight to be given to the registration. *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015) (citing 17 U.S.C. § 410(c)). Courts tend to extend the presumption of validity to such certificates absent any evidence calling the reliability of the certificate into question. *See* 3 NIMMER ON COPYRIGHTS § 12.11; s*ee also Compulife Software, Inc. v. Rutstein*, 2018 U.S. Dist. LEXIS 41111, at *31 (S.D. Fla. Mar. 12, 2018) ("The fact that Plaintiff missed the five-year window by less than one year weighs in favor of extending the presumption of validity") (citing *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 227 (S.D.N.Y. 1988) (quoting H.Rep. No. 1476, 94th Cong., 2d Sess., 156) ("The 1976 Act added the five year requirement because 'the longer the lapse of time between publication and registration the less likely to be reliable are the facts stated in the certificate'")); *Affordable Aerial Photography, Inc. v. Proud Co., LLC*, 2024 U.S. Dist. LEXIS 88336, at *4 (S.D. Fla. May 7, 2024) (finding plaintiff's copyright valid where the certificate of registration was obtained nine years after the work's first publication); *Jenkins v. Jury*, 2009 U.S. Dist. LEXIS 32048, at *10-11 (M.D. Fla. Apr. 16, 2009) (finding that certificates of registration obtained ten years after the work's first publication nonetheless constitute prima facie evidence of valid copyrights).

The Images at issue here are covered by two different certificates of registration: Registration Nos. VA-395-564 and VA 2-360-714. *See* SAC Ex. 1. The former was registered in 2024, within five years of publication (in 2021) and is presumptively valid. The latter was registered in August 2023, for images that were published between May and September 2018, such

that some are within the five-year window (photographs published from August-September 2018) and some are just barely outside of the five-year window (photographs published from May-July 2018). All, however, warrant a presumption of validity, as Defendant does not allege any facts that would call the registration for the earlier-published images into question.

**2. <u>Defendant Alleges No Facts That Could Invalidate the Copyright Registrations</u>**

Copyright registrations serve as a prerequisite to filing an action for copyright infringement. 17 U.S.C. § 411(a).  A certificate of registration satisfies that requirement, even if it contains inaccurate information, "unless (A) the inaccurate information was included in the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 USC § 411(b)(1). Here, Defendant does not allege any facts to satisfy either of these elements.

**a. <u>Defendant Does Not Plausibly Allege Any Inaccuracies, Let Alone Material Ones</u>**

Defendant alleges no facts whatsoever that put Plaintiff's copyright registrations into question, let alone any inaccuracies. For this reason alone, Counterclaim II fails.

First, Defendant's conclusory allegation that the Images were "copied from" the '028 Patent Application is plainly contradicted by a basic side-by-side comparison of the alleged Images, on one hand and the alleged figures from the '028 Patent Application, on the other hand:

*Alleged Images (Counterclaims, ¶ 5):*



*Alleged Figures from the '028 Patent Application (Counterclaims, ¶ 6):*



The Images are, simply put, nothing like the figures in the '028 Patent Application. While the images contained in the '028 Patent Application consist entirely of black-and-white technical drawings, Plaintiff's imagery consists of colored photography showcasing genuine TUSHBABY Carriers and models demonstrating the TUSHBABY Carrier in use. The Images are so obviously different from the figures contained in the '028 Patent Application, and bear such little resemblance, that Defendant's conclusion that they "copy" anything from the '028 Patent Application (let alone copy enough to call Plaintiff's copyrights into question) should be rejected on its face. *C.f. Wooten v. Netflix, Inc.*, 2021 U.S. Dist. LEXIS 203672, at *7 (N.D. Ga. May 25, 2021) (explaining that courts can consider allegations of copying and substantial similarity at the motion-to-dismiss stage where "the analysis requires only an examination of the works in question").

Second, Defendant's conclusory allegation that "features of the alleged copyright" were "claimed as functional" in the '028 Patent Application, Counterclaims ¶ 15, is nonsensical. Defendant does not, and cannot, plausibly identify any "features" of the Images that were "claimed as functional," because there are none. The "features" of the Images that render them subject to

copyright registration—*i.e.* the creative choices made by the photographer—are simply not "features" claimed in the '028 Patent Application.

Copyright protection is available for pictorial, graphic, and sculptural works that are original and creative. 17 U.S.C. § 102(a)(5); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). An original work is one "independently created by the author (as opposed to copied from other works)," meaning that two highly similar works may both be original, provided that neither is the result of copying. *Id.* Protectable works must also possess "a modicum of creativity," which is a very low standard that is satisfied by most works. *Id.*

While copyright protection is not available for useful articles—that is, articles "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," 17 U.S.C. § 101—the useful article doctrine does not apply to separate expression, such as a photograph, which depicts a useful article. Indeed, the Supreme Court explained over a century ago that photographs can enjoy copyright protection based on the creative choices taken by a photographer, whether the subject depicted therein is copyrightable or not. *See Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884).

Defendant's conclusory allegation that "features" of the Images were purportedly "claimed" in the '028 Patent Application ignores well over a century of authority recognizing the copyrightability of photographs, separate and apart from the subject therein. *See, id.; see also, e.g. Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409-12 (11th Cir. 2015) (recognizing copyright protection in a photograph of wooden planks); *Latimer*, 601 F.3d at 1231 (recognizing copyright protection in photographs of motorcycles used in advertisements); *Sadowski v. Unlawful Threads LLC*, 2024 U.S. Dist. LEXIS 97631, at *4-5 (S.D. Fla. Mar. 28, 2024) (recognizing copyright protection in a photograph of a Home Depot store); *Max'Is Creations*

13

*Inc. v. Individuals*, 2023 U.S. Dist. LEXIS 219816, at *3 (S.D. Fla. Dec. 8, 2023) (recognizing copyright protection in photographs of patented mugs and bowls used in advertisements and marketing); *Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.*, 2022 U.S. Dist. LEXIS 227304, at *3 (S.D. Fla. Dec. 19, 2022) (recognizing copyright protection in a stock photograph of chicken wings); *c.f. Morford v. Cattelan*, 2022 U.S. Dist. LEXIS 118967, at *16-17 (S.D. Fla. July 6, 2022) (finding some degree of copyright protection in the author's selection, coordination, and arrangement of creative elements which make up an art piece depicting a banana duct taped to a wall).

At bottom, even if the Images depicted something claimed as functional in the '028 Patent Application, the Images themselves are not "claimed as functional," and there is thus no inaccuracy. *C.f. Mazer v. Stein*, 347 U.S. 201, 217 (1954) ("Neither the Copyright Statute nor any other says that because a thing is patentable it may not be copyrighted").

b. **Defendant Does Not Plausibly Allege That Plaintiff Was Aware of Any Material Inaccuracies**

Even if a copyright registration contains a material inaccuracy, it is only subject to invalidation if the inaccurate information "was included on the application for copyright registration with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). Setting aside Defendant's utter inability to allege any material inaccuracies, Defendant furthermore alleges no facts to suggest that Plaintiff included material inaccuracies knowingly or intentionally. *See Roberts v. Gordy*, 877 F.3d 1024, 1030 (11th Cir. 2017).

\*   \*   \*

In sum, Defendant does not allege any facts, let alone plausibly so, to rebut the presumption of validity afforded to the TUSHBABY Copyrights. Nor could it. As such, Defendant's Counterclaim II should be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Defendant's Counterclaims with prejudice in their entirety.

Dated: October 7, 2024

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
ESCA Legal LLC
9000 Dadeland Blvd. #1500
Miami, FL 33156
Tel.: (305) 523-9023
james@esca.legal

Leo M. Lichtman (admitted *pro hac vice*)
ESCA Legal LLC
1117 Sixth Avenue, Fifth Floor
New York, New York 10036
Tel.: (347) 745-2535
leo@esca.legal

*Attorneys for Plaintiff Tushbaby, Inc.*