UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21136-LEIBOWITZ/TORRES

TUSHBABY, INC.,

    Plaintiff,

v.

SHIAON, a Foreign Corporation,

    Defendant.
_____/

**MOTION TO DISMISS DEFENDANT SHIAON'S AMENDED COUNTERCLAIMS**

Plaintiff Tushbaby, Inc. ("Plaintiff") hereby requests that this Court dismiss Defendant Shiaon's ("Defendant") amended counterclaims in their entirety [*see* ECF No. 112, at 23] (the "Amended Counterclaims") and states as follows:

### I.    INTRODUCTION[1]

In its first Answer & Counterclaims [ECF No. 101] (the "Original Counterclaims"), Defendant sought to invalidate Plaintiff's trade dress and copyright rights on the basis that the features thereof purportedly overlap with features that were claimed in an application for a utility patent filed by a third party. In response, Plaintiff moved to dismiss the Original Counterclaims based on Defendant's failure to allege any factual basis to support its claims. Defendant amended its Counterclaims but still neglected to allege sufficient facts, instead resting on facially deficient allegations of copying and introducing new arguments that further confuse the issues. Plaintiff's oppositions to Defendant's Original Counterclaims persist, as Defendant still has not plead

---

[1] As noted in Plaintiff's motion to dismiss Defendant Fleerose's amended counterclaims [ECF No. 113], Defendant SHIAON, represented by the same counsel, filed identical amended counterclaims. This motion, which is filed separately in an abundance of caution, accordingly provides identical grounds for dismissal.

1

sufficient facts to support a claim upon which relief can be granted. To the contrary, Defendant's amended counterclaims merely underscore that Defendant cannot plead any facts sufficient to state a claim. Therefore, Defendant's Amended Counterclaims should be dismissed with prejudice.

## II. BACKGROUND

### a. Relevant Allegations

Plaintiff is a leading manufacturer and distributor of infant carriers. *See* Plaintiff's Second Amended Complaint [ECF No. 84] (the "SAC"), ¶ 14. Plaintiff's flagship product, the TUSHBABY Hip Seat Baby Carrier (the "TUSHBABY Carrier" or "Plaintiff's Carrier"), bears unique and distinctive trade dress, which has been registered with the U.S. Patent and Trademark Office (the "TUSHBABY Trade Dress" or "Plaintiff's Trade Dress").[2] *See* SAC, ¶ 2, Ex. 2. Plaintiff is also the owner of various copyrights in and to expressive content related to the TUSHBABY Carrier, which has been registered with the U.S. Copyright Office (the "TUSHBABY Copyrights" or "Plaintiff's Copyrights").[3] *See* SAC, ¶¶ 1, 15, Ex. 1. The success of Plaintiff's Carrier has resulted in significant infringement of Plaintiff's corresponding intellectual property rights.

Plaintiff filed this action against Defendant on March 25, 2024 because Defendant owns and operates an e-commerce business dedicated to infringing Plaintiff's rights and trading off of its goodwill. Since at least 2023, if not earlier, Defendant has been selling, offering for sale, marketing, distributing, and advertising unauthorized products which utilize the TUSHBABY Trade Dress wholesale in order to trade upon Plaintiff's goodwill and reputation (the "Infringing Products"), in violation of Plaintiff's trademark rights under the Lanham Act, 15 U.S.C. §§ 1114 & 1125. *See* SAC, ¶¶ 23, 33. Defendant furthermore directly copied protectable expression from

---

[2] The TUSHBABY Trade Dress is covered by U.S. Patent and Trademark Office Registration No. 7,489,071.
[3] The TUSHBABY Copyrights are covered at least by U.S. Copyright Office Registration Nos. VA 2-360-714, VA 2-360-713, VAu 1-511-372, and VA 2-395-564.

Plaintiff's copyrighted marketing imagery to market its Infringing Products, in furtherance of its unlawful and deceptive conduct, violating Plaintiff's exclusive copyright rights in the TUSHBABY Copyrights. *See* 17 U.S.C. § 106. *See* SAC, ¶ 33.

### b. **Defendant files Counterclaims Which are Facially Deficient**

On October 1, 2024, Defendant filed its Answer & Counterclaims to the SAC [ECF No. 101], seeking judicial declarations invalidating Plaintiff's trade dress in its TUSHBABY Carrier and Plaintiff's Copyrights in certain TUSHBABY Images on the alleged basis that they were purportedly copied from a published patent application, Pub. US2016/0286980 A1 ("the '980 Patent Application")[4], and that "all of [the alleged] features" of the TUSHBABY Trade Dress and Copyrights "were claimed as functional" in the '980 Patent Application. [ECF No. 90, at ¶¶ 11, 16].[5] Defendant plead no facts to support these conclusions, instead relying on comparisons between images of the TUSHBABY Carrier and figures from the '980 Patent Application.

On October 24, 2024, Plaintiff filed its Motion to Dismiss Defendant Shiaon's Counterclaims [ECF No. 109] for failure to state a claim for relief. First, Plaintiff argued that Defendant's Counterclaim I, seeking to invalidate the TUSHBABY Trade Dress, should be dismissed because the '980 Patent Application, on its face, contradicts Defendant's allegations of copying. [ECF No. 109, at 5]. Plaintiff noted that Defendant failed to allege which features of the TUSHBABY Trade Dress were claimed as functional in the '980 Patent Application. [*Id.* at 6].

---

[4] Defendant's allegations refer to the '980 Patent Application as a "utility patent," implying that it is a registration certificate, but the referenced number cited by Defendant refers to a patent application which was published on October 6, 2016. [ECF Nos. 104; 104-1]. Furthermore, the '980 Patent Application is the exact same document as the '028 Patent Application, notwithstanding that Defendant now cites to the last three letters of the application number rather than the first three.

[5] Though Defendant alleges that the claimed features of Plaintiff's trade dress are "straps, rounded pouch, size *[sic]* zipper and mesh pockets," Amended Counterclaims ¶ 7, Amended Counterclaim I appears to seek an order invalidating the federal trade dress *registration* that Plaintiff obtained, *see* Amended Counterclaims ¶ 3. That registration specifically covers the three-dimensional configuration of "a pocket and a flap." *See* SAC Ex. 2.

Furthermore, as Plaintiff described, the '980 Patent Application claims features that do not even exist on the TUSHBABY Carrier. [*Id.*]. Second, Plaintiff argued that Defendant's Counterclaim II, seeking to invalidate the TUSHBABY Copyrights in three of Plaintiff's Images, should be dismissed because Defendant failed to plausibly allege a factual basis for invalidating Plaintiff's Copyrights. [*Id.* at 8]. Defendant failed to allege any facts that could rebut the presumption of validity afforded to the TUSHBABY Copyrights based on the certificates of registration issued by the U.S. Copyright Office. [*Id.* at 9]. Furthermore, Defendant's conclusory allegation that "features" of the Images were purportedly "claimed" in the '980 Patent Application ignores well over a century of authority recognizing the copyrightability of photographs of patentable subject matter. [*Id.* at 13].

      **c. Defendant Amends Its Counterclaims, But Still Fails to Plead Any Facts That Plausibly State a Claim for Relief**

On October 27, 2024, Defendant filed its Answer & Amended Counterclaims [ECF 112] (the "Amended Counterclaims"). Defendant stood by the same causes of action, seeking judicial declarations that the TUSHBABY Trade Dress and Copyrights to certain TUSHBABY Images are invalid. As to Counterclaim I (trade dress), Defendant added an allegation specifying which features of the TUSHBABY Trade Dress were purportedly "claimed as functional" in the '980 Patent Application—the "straps, rounded pouch, size *[sic]* zipper and mesh pockets." ¶ 11-12. However, as Plaintiff previously argued, Defendant *cannot* allege which features are claimed as functional in the '980 Patent Application because the alleged features in the '980 Patent Application, on their face, serve completely different functions. [ECF 109, at 5-8]. Defendant's new allegations provide no new incite, but instead merely confirm Plaintiff's prior arguments, and Defendant alleges no other facts to support invalidating Plaintiff's registered Trade Dress. Rather, Defendant provides a bare legal conclusion that the TUSHBABY Trade Dress is purportedly "not

4

physically separable from all utilitarian functions. Amended Counterclaims, ¶ 14. This is nonsensical in light of the fact that '980 Patent Application simply does not say what Defendant alleges it says, and is furthermore irrelevant as separability is not part of the analysis. In its Amended Counterclaim II (copyright), Defendant alleges no new facts at all. Instead, Defendant provides bare legal conclusions, namely that Plaintiff's photographs at issue are not copyrightable because the "subject of the photographs is a useful article" because the photographs contain a "hip seat for infants/children" with "an intrinsic utilitarian function," and that the claimed copyrightable features of the photographs are "not physically separable." Amended Counterclaims ¶¶ 20-22. None of these conclusory allegations have to be accepted as true, and, as explained below, should be wholly rejected.

### III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complainant must allege facts that, accepted as true, are sufficient to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is appropriate where, accepting the pleaded facts as true, there is a dispositive legal issue that precludes relief. *Neitze v. Williams*, 490 U.S. 319, 326 (1989); *see also Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 920 (11th Cir. 2012) (dismissal appropriate where "the plaintiff can prove no set of facts that would support the claims in the complaint"). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Lewis v. Fannie Mae*, 2022 U.S. App. LEXIS 4177, at *4 (11th Cir. Feb. 15, 2022).

Courts at the motion to dismiss stage consider the complaint in its entirety, including any documents appended to the complaint or "referred to in the complaint, central to the plaintiff's

claim, and of undisputed authenticity." *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Quinonez v. United States*, 2023 U.S. Dist. LEXIS 26611, at *3 (S.D. Fla. Feb. 15, 2023). Courts may also take judicial notice of undisputed facts at the motion to dismiss stage, including relevant public documents. Fed. R. Evid. 201; *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) (taking judicial notice of documents filed with the SEC). This includes documents filed with the U.S. Patent and Trademark Office (the "USPTO"). *See, e.g., Domond v. PeopleNetwork Aps*, 2017 U.S. Dist. LEXIS 94001, at *4 n.1 (S.D. Fla. June 16, 2017) (taking judicial notice of records from the U.S. Patent and Trademark Office); *Edge Sys. LLC v. Aguila*, 2015 U.S. Dist. LEXIS 145268, at *9 n.5 (S.D. Fla. Jan. 29, 2015) (taking judicial notice of a patent on file with the USPTO); *see also Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) ("It is also well-established that a court may take judicial notice of patents or patent applications").

## IV.  ARGUMENT

Defendant's Amended Counterclaims fail because Defendant does not—and cannot—articulate any factual or legal basis to invalidate Plaintiff's registered trade dress and copyrights. To the contrary, the '980 Patent Application—on which Defendant's Amended Counterclaims rely—establish that there are no facts Defendant could plead which would warrant the relief Defendant seeks. Accordingly, Defendant's Amended Counterclaims should be dismissed with prejudice.

**A. AMENDED COUNTERCLAIM I SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE '980 PATENT APPLICATION, ON ITS FACE, CONTRADICTS DEFENDANT'S ALLEGATIONS**

Defendant's Counterclaim I seeks a judicial order declaring the TUSHBABY Trade Dress invalid, resting on the propositions that the "straps, rounded pouch, size [sic] zipper and mesh pockets" of the TUSHBABY Trade Dress (1) were allegedly copied from and overlap with the claimed features of the '980 Patent, and (2) cannot be physically separated from their "intrinsic utilitarian function." Amended Counterclaims, ¶ 11-14. Defendant's assertions are entirely conclusory and fail to even address Plaintiff's prior motion to dismiss, [ECF 109], which already pointed out exactly why such allegations are contradicted, on their face, by the '980 Patent Application. Therefore, Defendant's Amended Counterclaim II should be dismissed with prejudice.

1. **Defendant's Allegations of Copying Are Facially Deficient**

Defendant claims that the "straps, rounded pouch, size [sic] zipper and mesh pockets" of the TUSHBABY Trade Dress were allegedly copied from and overlap with the claimed features in the '980 Patent. Amended Counterclaims, ¶ 11-12. But even a cursory review of the '980 Patent demonstrates that this is not true.

At the outset, Plaintiff's registration for the TUSHBABY Trade Dress specifically covers the three-dimensional configuration of "a pocket and a flap", as depicted below, *see also* SAC Ex. 2:



This is a design that is unique to Plaintiff's Carrier, and, as the USPTO acknowledged when it issued a registration, it is presumably valid and non-functional. *See* 15 U.S.C. § 1115(a) ("Any registration… of a mark registered on the principal register… shall be prima facie evidence of the validity of the registered mark…"; *see Nailtiques Cosmetic Corp. v. Salon Scis. Corp.*, 1997 U.S. Dist. LEXIS 4662, at *6 (S.D. Fla. Jan. 9, 1997) (presumption of validity applies to registered trade dress).

By contrast, the '980 Patent Application, which was filed by ERGO Baby Carrier, Inc., [ECF No. 104-1], relates to an alternative hip carrier design. As Plaintiff previously noted, and which Defendant's Amended Counterclaim I fails to address, the front pocket and clasp of the products, on their face, look markedly different, given that the flap in the TUSHBABY Trade Dress is crescent or oblong in shape and covers nearly half of the pocket, whereas the flap in the '980 Patent is a narrow rectangle contained to the top portion of the carrier. [*See* ECF 104-1, Fig. 6, Fig. 10B, Fig. 11D]. Defendant's Amended Counterclaim I furthermore fails to address Plaintiff's prior argument that the '980 Patent Application depicts a carrier with two snaps on either side of the rectangular flap with no label [ECF 104-1, Fig. 6, Fig. 10B, Fig. 11D], whereas the TUSHBABY Trade Dress includes a *single* snap closure, centered in the middle of the rounded flap with a label affixed above the snap.

Defendant furthermore conclusively alleges that the "straps, rounded pouch, size [sic] zipper and mesh pockets" (*see* Amended Counterclaims, ¶ 11) in the TUSHBABY Trade Dress "were claimed as functional in the '980 Patent," Amended Counterclaims, ¶ 12, wholly ignoring that Plaintiff previously already explained precisely why this conclusion is false.

*First*, the front pocket **635** on the '980 Patent Application serves the function of "receiving hip seat insert **100** thru insert pocket flap **646**." [ECF No. 104-1, at 5 [¶ 0076]]. This removable seat insert is depicted in Fig. 2:



By contrast, Plaintiff is not claiming a pocket for inserting or removing the carrier's seat insert in its trade dress, *see* SAC Ex. 2. The Amended Counterclaims do not allege otherwise.

*Second*, the two snaps on the '980 Patent Application are "hip/waist belt portion press-fit snaps **642** or **640**" which snap into a separate "support flap press-fit snaps **655**" for the purpose of mechanically attaching the "hip seat carrier **500** with torso support portion **650**." [ECF No. 104-1, at 6 [¶ 0081]]. This is "generally depicted in Fig. 7" and further illustrated by Fig. 8, which are shown below:



9

Once again, Plaintiff is not claiming dual "press-fit snaps" for fastening an extra torso support as part of its trade dress, SAC Ex. 2, because those features do not even exist on the TUSHBABY Carrier. The Amended Counterclaims contain no allegations to suggest otherwise.

*Third*, the hip seat pocket **635** on the '980 Patent Application, including the fasteners **640**, **642** and the flap **648** contained therein, also serves "to cover, protect or otherwise obscure hip/waist belt portion zipper **644**," as depicted in Fig. 7. [ECF No. 104-1, at 6 [¶ 0081]]. In contrast, the TUSHBABY Trade Dress does not serve to cover, protect, or obscure any other features of the TUSHBABY Carrier. In fact, the TUSHBABY Carrier does not even contain a zipper to conceal. The Counterclaims do not allege otherwise.

Finally, to the extent that Defendant specifically seeks to invalidate the *registration* for the TUSHBABY Trade Dress, it is worth noting that the registration explicitly covers the configuration of pocket and flap, as noted above, so Defendant's new allegations concerning "straps," "size zipper," and "mesh pockets," are ultimately irrelevant.

Given that Defendant fails to plausibly allege any facts to support invaliding the TUSHBABY Trade Dress registration, and given that the '980 Patent Application, on its face forecloses Defendant's legal theory for doing so, the Court should dismiss Defendant's Amended Counterclaim I with prejudice.

2. **Defendant Does Not Allege Any Facts to Rebut the Presumption of Validity**

In its Amended Counterclaim I, Defendant now alleges that the features of the TUSHBABY Trade Dress are functional and cannot be physically separated from their "intrinsic utilitarian function," such that the TUSHBABY Trade Dress is unprotectable. Amended Counterclaims, ¶ 12-14. However, Defendant's conclusory allegations are once again baseless, and the Court need not accept them as true.

10

As discussed above, the USPTO registered the TUSHBABY Trade Dress on the principal register, thereby entitling the TUSHBABY Trade Dress to a presumption of validity and non-functionality. *See* supra Section IV.A.1; 15 U.S.C. § 1115(a). Defendant fails to allege any facts to rebut it. Merely stating that features of the TUSHBABY Trade Dress "have an intrinsic utilitarian function" (Amended Counterclaims, ¶ 13) without any supporting facts is ineffective.

Defendant did not, and cannot, satisfactorily allege that the TUSHBABY Trade Dress is functional. The key elements of the TUSHBABY Trade Dress—the rounded pouch with an oblong flap and centered snap closure affixed below a rectangular label—are not "essential to the use or purpose" of the baby carrier, nor do they "affect[ ] the cost or quality" of the carrier. *See Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 850 n.10 (1982). Plaintiff's exclusive use of the TUSHBABY Trade Dress would not put its competitors at a significant non-reputational disadvantage, as there are practicable alternative baby carrier designs available for use. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 169-70 (1995). Indeed, the Southern District of New York recently explained, at length, why these very arguments fail, rejecting the very same arguments brought by infringers engaged in remarkably similar conduct to Defendant here. [*See* ECF No. 113-1 ( Opinion & Order, *Tushbaby, Inc. v. Jinjang Kanbersi Trade Co., Ltd.*, No. 24-CV-6150 (JMF), slip op. at 10-12 (S.D.N.Y. Oct. 30, 2024)].

Finally, Defendant's claim that features of the TUSHBABY Trade Dress "are not physically separable from all utilitarian functions, thus, not protectable by the laws of trade dress" (Amended Counterclaims, ¶ 14) is unavailing. Nowhere does Defendant explain why physical separability is even relevant to the functionality determination.

Despite amending its counterclaims, Defendant still fails to rebut the presumption of validity entitled to the TUSHBABY Trade Dress, let alone offer any facts to even call that validity into question. Amended Counterclaim I should be dismissed with prejudice.

**B. AMENDED COUNTERCLAIM II SHOULD BE DISMISSED WITH PREJUDICE BECAUSE DEFENDANT FAILS TO PLAUSIBLY ALLEGE A FACTUAL BASIS FOR INVALIDATING PLAINTIFF'S COPYRIGHTS**

Defendant's Amended Counterclaim II seeks to invalidate registered TUSHBABY Copyrights in the below photographic and visual works used to advertise and promote Plaintiff's Carrier (the "Images" or "Plaintiff's Images"):



As with Amended Counterclaim I, Amended Counterclaim II rests on conclusory assertions, namely that these Images were allegedly copied from the '980 Patent Application and were "claimed as functional" in the '980 Patent Application, and that the Images' "intrinsic utilitarian function[s]" "are not physically separable, thus, not copyrightable." Amended Counterclaims, ¶¶ 18-19, 21-22. Defendant further claims that the Images "do not express any ideas that are copyrightable." Amended Counterclaims, ¶ 23. Defendant alleges no facts to plausibly support these conclusions, which need not be accepted as true. Indeed, they are demonstrably false, including for the reasons explained above. However, even accepting

12

Defendant's allegation that the Images above were "copied" from black-and-white drawings, it would still not rebut the presumption of validity afforded to the TUSHBABY Copyrights.

1. **Plaintiff's Copyright Registrations Serve as Prima Facie Evidence that the Images Are Valid and Protectable**

At the outset, the Images at issue are original, creative pictorial and graphic works, duly registered with the U.S. Copyright Office, and presumptively valid. 17 U.S.C. § 410(c). The Copyright Act provides that a certificate of registration in copyrighted work made within five years of the work's first publication constitutes prima facie evidence of the copyright's validity. 17 U.S.C. § 410(c). Once a plaintiff produces a certificate of registration made within five years of the work's first publication, the burden then shifts to the defendant to prove that the copyrighted work is invalid. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

Even certificates of registration made more than five years after the work's first publication can still serve as prima facie evidence of their validity, and it is within the court's discretion to determine the evidentiary weight to be given to the registration. *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015) (citing 17 U.S.C. § 410(c)). Courts tend to extend the presumption of validity to such certificates absent any evidence calling the reliability of the certificate into question. *See* 3 NIMMER ON COPYRIGHTS § 12.11; s*ee also Compulife Software, Inc. v. Rutstein*, 2018 U.S. Dist. LEXIS 41111, at *31 (S.D. Fla. Mar. 12, 2018) ("The fact that Plaintiff missed the five-year window by less than one year weighs in favor of extending the presumption of validity") (citing *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 227 (S.D.N.Y. 1988) (quoting H.Rep. No. 1476, 94th Cong., 2d Sess., 156) ("The 1976 Act added the five year requirement because 'the longer the lapse of time between publication and registration the less likely to be reliable are the facts stated in the certificate'")); *Affordable Aerial Photography, Inc. v. Proud Co.,*

*LLC*, 2024 U.S. Dist. LEXIS 88336, at *4 (S.D. Fla. May 7, 2024) (finding plaintiff's copyright valid where the certificate of registration was obtained nine years after the work's first publication); *Jenkins v. Jury*, 2009 U.S. Dist. LEXIS 32048, at *10-11 (M.D. Fla. Apr. 16, 2009) (finding that certificates of registration obtained ten years after the work's first publication nonetheless constitute prima facie evidence of valid copyrights).

The Images at issue here are covered by two different certificates of registration: Registration Nos. VA-395-564 and VA 2-360-714. *See* SAC Ex. 1. The former was registered in 2024, within five years of publication (in 2021) and is presumptively valid. The latter was registered in August 2023, for images that were published between May and September 2018, such that some are within the five-year window (photographs published from August-September 2018) and some are just barely outside of the five-year window (photographs published from May-July 2018). All, however, warrant a presumption of validity, as Defendant does not allege any facts that would call the registration for the earlier-published images into question.

### 2. Defendant Alleges No Facts That Could Invalidate the Copyright Registrations

Copyright registrations serve as a prerequisite to filing an action for copyright infringement. 17 U.S.C. § 411(a). A certificate of registration satisfies that requirement, even if it contains inaccurate information, "unless (A) the inaccurate information was included in the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 USC § 411(b)(1). Here, Defendant does not allege any facts to satisfy either of these elements.

### a. Defendant Does Not Plausibly Allege Any Inaccuracies Let Alone Material Ones

Defendant alleges no facts whatsoever that put Plaintiff's copyright registrations into question, let alone any inaccuracies. For this reason alone, Amended Counterclaim II fails.

14

*First*, Defendant's conclusory allegation that the Images were "copied from" the '980 Patent Application is plainly contradicted by a basic side-by-side comparison of the alleged Images, on one hand and the alleged figures from the '980 Patent Application, on the other hand:

*Alleged Images (Counterclaims, ¶ 5):*



*Alleged Figures from the '980 Patent Application (Counterclaims, ¶ 6):*



The Images are, simply put, nothing like the figures in the '980 Patent Application. While the images contained in the '980 Patent Application consist entirely of black-and-white technical drawings, Plaintiff's imagery consists of colored photography showcasing genuine TUSHBABY Carriers and models demonstrating the TUSHBABY Carrier in use. The Images are so obviously different from the figures contained in the '980 Patent Application, and bear such little resemblance, that Defendant's conclusion that they "copy" anything from the '980 Patent Application (let alone copy enough to call Plaintiff's copyrights into question) should be rejected on its face. *C.f. Wooten v. Netflix, Inc.*, 2021 U.S. Dist. LEXIS 203672, at *7 (N.D. Ga. May 25,

15

2021) (explaining that courts can consider allegations of copying and substantial similarity at the motion-to-dismiss stage where "the analysis requires only an examination of the works in question").

*Second*, Defendant's assertion that the Images "do not express any ideas that are copyrightable," Amended Counterclaims ¶ 23, is simply false, as is its conclusory allegation that "features of the alleged copyright" were "claimed as functional" in the '980 Patent Application, Amended Counterclaims ¶ 19. Defendant does not, and cannot, plausibly identify any "features" of the Images that were "claimed as functional," because there are none. The Copyright Office did not register any "features" claimed in the '980 Patent Application; it registered photographs, which are inherently separable from any features in a utility patent.

Copyright protection is available for pictorial, graphic, and sculptural works that are original and creative. 17 U.S.C. § 102(a)(5); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). An original work is one "independently created by the author (as opposed to copied from other works)," meaning that two highly similar works may both be original, provided that neither is the result of copying. *Id.* Protectable works must also possess "a modicum of creativity," which is a very low standard that is satisfied by most works. *Id.*

While copyright protection is not available for useful articles—that is, articles "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," 17 U.S.C. § 101—the useful article doctrine does not apply to separate expression, such as a photograph, which depicts a useful article. For example, a chair design may not be copyrightable if it is inseparable from the chair's utilitarian function (*i.e.* to sit); but a promotional photograph of that same chair is, by its very nature, a separate (and therefore separable)

16

expression. Accordingly, even if Plaintiffs' photographs depicted the subject of a utility patent, it would not affect their copyrightability.

Indeed, the Supreme Court explained over a century ago that photographs can enjoy copyright protection based on the creative choices taken by a photographer, whether the subject depicted therein is copyrightable or not. *See Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884). Defendant's conclusory allegation that "features" of the Images were purportedly "claimed" in the '980 Patent Application ignores well over a century of authority recognizing the copyrightability of photographs, separate and apart from the subject therein. *See, id.; see also, e.g. Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409-12 (11th Cir. 2015) (recognizing copyright protection in a photograph of wooden planks); *Latimer*, 601 F.3d at 1231 (recognizing copyright protection in photographs of motorcycles used in advertisements); *Sadowski v. Unlawful Threads LLC*, 2024 U.S. Dist. LEXIS 97631, at *4-5 (S.D. Fla. Mar. 28, 2024) (recognizing copyright protection in a photograph of a Home Depot store); *Max'Is Creations Inc. v. Individuals*, 2023 U.S. Dist. LEXIS 219816, at *3 (S.D. Fla. Dec. 8, 2023) (recognizing copyright protection in photographs of patented mugs and bowls used in advertisements and marketing); *Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.*, 2022 U.S. Dist. LEXIS 227304, at *3 (S.D. Fla. Dec. 19, 2022) (recognizing copyright protection in a stock photograph of chicken wings); *c.f. Morford v. Cattelan*, 2022 U.S. Dist. LEXIS 118967, at *16-17 (S.D. Fla. July 6, 2022) (finding some degree of copyright protection in the author's selection, coordination, and arrangement of creative elements which make up an art piece depicting a banana duct taped to a wall).

Defendant's incorporation of *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010) into its allegations lends no support for its claim. Amended Counterclaims, ¶ 20. The

17

issue in that case was whether a sculptural work attached to a useful article—a pacifier—was separable from the utilitarian aspects of the pacifier holder. Contrary to Defendant's allegation, *Baby Buddies* says nothing of whether a photograph can be a useful article.

*Third*, Defendant's assertion that the "features TUSHBABY claimed as copyright are not physically separable, thus, not copyrightable," Amended Counterclaims, ¶ 22, is conclusory and meritless, and can be rejected on its face. A separability analysis is only required "for any 'pictorial, graphic, or sculptural features' incorporated into the 'design of a useful article.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 412 (2017). As discussed above, the TUSHBABY Copyrights cover photographs of the TUSHBABY Carrier, not the TUSHBABY Carrier itself. The Images are not incorporated into the design of the Carrier. Indeed, photographs, by their very nature, are physically and conceptually separable from useful articles. *See, e.g., Major v. Sony Music Entm't, Inc.*, 1992 U.S. Dist. LEXIS 12316, at *8-9 (S.D.N.Y. Aug. 17, 2022) ("[T]he concept of 'useful article' is only applicable to the case at bar to the extent that it demonstrates that, while the video package cover itself is not copyrightable, the photograph, which is separable from the useful article, is copyrightable.").

At bottom, even if the Images depicted something claimed as functional in the '980 Patent Application, the Images themselves are not "claimed as functional," and there is thus no inaccuracy. *C.f. Mazer v. Stein*, 347 U.S. 201, 217 (1954) ("Neither the Copyright Statute nor any other says that because a thing is patentable it may not be copyrighted").

### b. **Defendant Does Not Plausibly Allege That Plaintiff Was Aware Of Any Material Inaccuracies**

Even if a copyright registration contains a material inaccuracy, it is only subject to invalidation if the inaccurate information "was included on the application for copyright registration with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). Setting aside

Defendant's utter inability to allege any material inaccuracies, Defendant furthermore alleges no facts to suggest that Plaintiff included material inaccuracies knowingly or intentionally. *See Roberts v. Gordy*, 877 F.3d 1024, 1030 (11th Cir. 2017).

\*   \*   \*

In sum, Defendant does not allege any facts, let alone plausibly so, to rebut the presumption of validity afforded to the TUSHBABY Copyrights. Nor could it, as Defendants' Amended Counterclaims establish. As such, Defendant's Amended Counterclaim II should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss Defendant's Amended Counterclaims with prejudice in their entirety.

Dated: November 12, 2024

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
ESCA Legal LLC
9000 Dadeland Blvd. #1500
Miami, FL 33156
Tel.: (305) 523-9023
james@esca.legal

Leo M. Lichtman (admitted *pro hac vice*)
ESCA Legal LLC
1117 Sixth Avenue, Fifth Floor
New York, New York 10036
Tel.: (347) 745-2535
leo@esca.legal

*Attorneys for Plaintiff Tushbaby, Inc.*