UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21136-LEIBOWITZ

**TUSHBABY, INC.**,

    *Plaintiff*,

v.

**ZOOYEE**,

    *Defendant.*

_____/

## ORDER

THIS CAUSE comes before the Court on Plaintiff Tushbaby, Inc.'s ("Tushbaby") Motion for Entry of Final Default Judgment against Defendant Zooyee ("Zooyee") [Mot., ECF No. 135] ("the Motion"), filed on May 2, 2025. Despite Tushbaby's service of process on Zooyee [*see* ECF No. 19], Zooyee has failed to appear in this action and failed to timely respond to Tushbaby's Amended Complaint [Amend. Compl., ECF No. 91] or this Motion. For the foregoing reasons, the Motion is granted.

## BACKGROUND

TushBaby is in the business of creating and selling baby carriers, including the "TushBaby Hip Seat Carrier," (the "Tushbaby Carrier") at issue in this lawsuit. [Amend. Complaint, ECF No. 91 ¶ 2]. Tushbaby alleges that Zooyee is a business entity which resides in China or other foreign jurisdictions, is "improperly advertising, marketing and/or selling unauthorized and non-compliant products . . . by reference to and/or embodying Plaintiff's trade dress and copyrights, which causes further confusion and deception in the marketplace." [*Id.* ¶¶ 3, 20]. Tushbaby trade dress is covered by U.S. Trademark Registration No. 7489071 ("the Tushbaby Trade Dress"), as well as copyrighted works, which are

covered by at least U.S. Copyright Office Registrations No. VA 2-360-715, VA 2-360-714, VAu 1-511-350, VAu 1-511-354, VA 2-395-564 and VAu 1- 511-372 "the Tushbaby Copyrights.". [*Id.* ¶ 1].

The Tushbaby Carrier bears the distinctive Tushbaby Trade Dress which consists of the overall design and configuration of the product. [*Id.* ¶ 2]. The Tushbaby Carrier is a "single carrier that provides for the carrying of children . . . with five storage pockets and a hideable bottle holder." [*Id.* ¶ 15]. Since at least 2018, Tushbaby substantially and continuously has marketed and promoted the Tushbaby Carrier and its other products including substantial print media, Tushbaby's website, social media, and point of sale materials, all of which feature the distinctive Tushbaby Trade Dress and Copyrights. [*Id.* ¶ 16]. Tushbaby has expended substantial time, money, and other resources in developing its products and has received praise from various media outlets. [*Id.* ¶ 17]. As a result, Tushbaby products are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Tushbaby. [*Id.* ¶ 17]. Tushbaby owns all exclusive rights in connection with the sale, distribution, or advertising and the rights to grant licenses or authorization to third parties to use in commerce the Tushbaby Trade Dress. [*Id.* ¶ 18]. Tushbaby also owns all exclusive rights in and to the Tushbaby Copyrights, including without limitation the rights to create copies, to prepare derivative works, to distribute copies to the public by sale or other transfer of ownership, or by rental, lease, or lending, and to display copies publicly. [*Id.* ¶ 19].

Zooyee is improperly advertising marketing and selling unauthorized and non-compliant products by reference to or embodying Tushbaby's Trade Dress and Copyrights which causes confusion in the market. [*Id.* ¶ 3]. Zooyee has created a fully interactive commercial internet store operating within the Amazon online marketplace. [*Id.* ¶ 5]. Zooyee designed its Internet Store to appear to be selling Tushbaby's genuine products that embody and/or are sold by reference to the Tushbaby Trade Dress and Copyrights, while selling inferior imitations of such products. [*Id.*]. Tushbaby is harmed through consumer confusion and tarnishment of its copyrights and goodwill. [*Id.*

¶ 6]. Zooyee is offering for sale, selling, and importing infringing Tushbaby products to consumers throughout the United States, including in the Southern District of Florida. [*Id.* ¶ 22]. Zooyee facilitates these sales by designing its internet store to look to unknowing customers to be an authorized online retailer, outlet store, or wholesaler Selling genuine, authorized Tushbaby products. [*Id.* ¶ 24]. However, Zooyee is not licensed or authorized to us ethe Tushbaby Trade Dress or Copyrights and is not an authorized retailer of genuine Tushbaby Products. [*Id.* ¶ 25]. Zooyee has knowingly and willfully used, and continues to use, the Tushbaby Trade Dress and Copyrights in connection with the advertisement, distribution, offering for sale, and sale of infringing products into the United States and Florida over the internet. [*Id.* ¶¶ 27–28]. Zooyee's actions will cause irreparable harm to Tushbaby because Zooyee is causing confusion, mistake, and deception by and among consumers. [*Id.* ¶ 28].

Tushbaby brings five causes of action against Zooyee: (1) copyright infringement under the federal Copyright Act, (2) federal trade dress infringement, (3) federal false designation of origin & passing off, (4) a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and (5) Florida common law unfair competition. [*Id.* ¶¶ 29–70].

## LEGAL STANDARD

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court is authorized to enter a final judgment of default against a party who has failed to respond to a complaint. *See* Fed. R. Civ. P. 55(b)(2). The entry of default constitutes an admission by a defendant of the well-pleaded allegations in the complaint. *See Cancienne v. Drain Master of S. Fla., Inc.*, No. 08-cv-61123, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005)). However, a defendant's default "does not in itself warrant . . . entering a default judgment." *Goldman v. HSBC Bank USA, Nat'l Ass'n*, No. 13-cv-81271, 2015 WL 1782241, at *1 (S.D. Fla Mar. 24, 2015) (cleaned up) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200,

3

1206 (5th Cir. 1975)). Because a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered. *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default[.]").

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims[,] and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs.*, LLC, No. 19-cv-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021) (citing *Nishimatsu*, 515 F.2d at 1206), *report and recommendation adopted*, No. 19-cv-61358, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021). Thus, prior to entering a default judgment, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Where a complaint fails to state a claim, a default judgment on the complaint may not stand. *United States v. Kahn*, 164 F. App'x 855, 863 (11th Cir. 2006).

Once liability is established, the court turns to the issue of relief. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter, Fed. R. Civ. P. 55(b)(2). If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed. R. Civ. P. 55(b)(1)–(2); *Eisler v. Stritzler*, 535 F.2d 148, 153–54 (1st Cir. 1976). A court may award damages "as long as the record contains evidence allowing the court to ascertain damages from 'mathematical calculations' and 'detailed affidavits.'" *In re Liquid Toppings Dispensing Sys. ('447) Pat. Litig.*, No. 1:18-md-02832-KMM, 2021 WL 1053279, at *1 (S.D. Fla. Feb. 18, 2021) (citing *Holtz v.*

4

*Bagel Mkt., Inc.*, No. 12-cv-62040, 2013 WL 12141515, at *2 (S.D. Fla. Apr. 29, 2013) (quoting *Adolph Coors*, 777 F.2d at 1543–44)).

## DISCUSSION

Aagain, Tushbaby brings five counts against Zooyee: (1) Copyright Infringement under 17 U.S.C. § 101, *et seq.*, (2) Trade Dress Infringement under 15 U.S.C. § 1114, *et seq.*, (3) False Designation of Origin and Passing Off under 15 U.S.C. § 1125(a), (4) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") under Fla. Stat. § 501.201, *et seq.*, and (5) Unfair Competition under Florida Common Law. [*See* Compl.]. Tushbaby only moves for default judgment as to Counts II–V, claiming that it is no longer seeking "an affirmative finding of liability on [Count I] . . . due to unavailability of preserved evidence." [Mot. at 1 n.1]. Accordingly, this Court addresses Counts II through V in turn.

   I.   <u>Count II – Trade Dress Infringement</u>

"To succeed on a trade dress infringement claim, a plaintiff must show: (1) the trade dress is inherently distinctive or has acquired secondary meaning; (2) the trade dress is non-functional; and (3) the defendant's actions are likely to cause confusion." *Hyde Park Storage Suites Daytona, LLC v. Crown Park Storage Suites, LLC*, 631 F. Supp. 3d 1203, 1212–13 (M.D. Fla. 2022) (citing *J-B Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778, 788 (11th Cir. 2020)).

"A trade dress can be characterized either as product design or product packaging." *Id.* at 1213 (citing *Wal-Mart Stores, Inc. v. Samara Brothers*, 529 U.S. 205, 212 (2000)). "Because product packaging trade dress can be inherently distinctive, it is protectable without a showing of secondary meaning." *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)). "But a product design trade dress can never be inherently distinctive, so it is protectable only upon acquiring secondary meaning." *Id.* "To prove secondary meaning, a plaintiff 'must show that the primary significance of the product in the minds of the consuming public is not the product itself but the

5

producer.'" *Id.* (citing *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 857 n.7 (11th Cir. 1983)). "Without consumer survey evidence, four factors are considered in assessing secondary meaning: (1) length and manner of use; (2) nature and extent of advertising; (3) the plaintiff's efforts to promote a connection in the public's mind between its name and the product; and (4) the extent of the public's association of plaintiff's name with its services." *Id.* (citing *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991)). Based on the Amended Complaint, taken as true, Tushbaby has shown that its product has acquired secondary meaning. Tushbaby has promoted its hip carrier since at least 2018, has extensively marketed and advertised the carrier, and extensively attempted to connect the hip carrier to Tushbaby in the minds of the public. Taking the allegations in the Amended Complaint as true, the hip carrier clearly has acquired secondary meaning, satisfying the first prong.

"Under the traditional functionality test, a feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* at 1216 (cleaned up). The trade dress at issue is the design and configuration of the Tushbaby Carrier, which is described as "distinctive" and includes a single carrier that provides for the carrying of children with five storage pockets and a hideable bottle holder. Such a design is essential to the functionality of a product created to carry children while providing storage. Accordingly, the second prong is met.

"In assessing likelihood of confusion, courts consider: (1) strength of the trade dress; (2) design similarity; (3) similarity of goods and services; (4) similarity of trade channels and consumers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion." *Id.* (citing *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016)). "Evidence of actual confusion is the best evidence of a likelihood of confusion." *Id.* (citing *Frehling Enters., Inc. v. Int'l Select Grp.*, 192 F.3d 1330, 1340 (11th Cir. 1999)). As pleaded, Zooyee's products sold online are clear knock-offs of the Tushbaby Carrier and other genuine products that clearly reference Tushbaby, even though they are not official Tushbaby products. A clear inference is warranted that consumers

would very likely be confused when they purchase items they believe to be manufactured by Tushbaby, but are not actually Tushbaby products. Thus, the third prong is met.

Because all three prongs of trade dress infringement has been met, Tushbaby has successfully pleaded a claim of trade dress infringement and is entitled to default on Count II.

II. Count III – False Designation of Origin and Passing Off

"[A] false designation of origin claim, which proscribes the behavior of 'passing off' or 'palming off,' which "occurs when a producer misrepresents his own goods or services as someone else's." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n. 1 (2003)). "To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Id.* at 647–48 (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)). With respect to the second element, a court considers seven factors in assessing whether "likelihood of confusion" exists:

> (1) the type of mark (in short, whether the "relationship between the name and the service or good it describes" is such that the chosen name qualifies as generic, descriptive, suggestive, or arbitrary); (2) the similarity of the marks (based on "the overall impressions that the marks create, including the sound, appearance, and manner in which they are used"); (3) the similarity of the goods ("whether the products are the kind that the public attributes to a single source"); (4) the similarity of the parties' retail outlets, trade channels, and customers ("consider[ing] where, how, and to whom the parties' products are sold"); (5) the similarity of advertising media (examining "each party's method of advertising" to determine "whether there is likely to be significant enough overlap" in the respective target audiences such "that a possibility of confusion could result"); (6) the defendant's intent (determining whether the defendant had a "conscious intent to capitalize on [the plaintiff's] business reputation," was "intentionally blind," or otherwise manifested "improper intent"); and (7) actual confusion (that is, whether there is evidence that consumers were actually confused).

*Id.* at 648 (citing *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335–41 (11th Cir. 1999)).

Tushbaby sufficiently pleaded that it had an enforceable trademark right in the Tushbaby name and product, and thus satisfies the first prong of the false designation of origin test. Tushbaby also satisfies the second prong because all seven factors of the likelihood of confusion test are met. First, the mark is not a generic name and the relationship between Tushbaby and the hip carrier is sufficiently descriptive for the first factor to weigh in Tushbaby's favor. The second and third factor also weigh in Tushbaby's favor because Zooyee sold products that looked exactly like Tushbaby's products and even used Tushbaby's name on its products sold. The fourth and fifth factors weigh in favor of Tushbaby because Zooyee sold its products on Amazon.com, a large company that has roots throughout the entire United States, and Tushbaby also markets its goods across the United States. The sixth factor weighs in favor of Tushbaby because a court can infer that a defendant who uses a confusingly similar mark intended to capitalize on the plaintiff's reputation. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Finally, the seventh factor weighs in favor of Tushbaby because it pleaded that consumers were confused by Zooyee's actions in marketing and selling false Tushbaby products. Accordingly, the second prong was met and this Court finds that consumers were likely to confuse Tushbaby's products with Zooyee's products.

Accordingly, Tushbaby's Amended Complaint properly makes out a claim for False Designation of Origin and Passing Off and is entitled to a default judgment on Count III.

### III.   Count IV – FDUTPA

To prove a claim under FDUTPA, "a plaintiff must show (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1351 (S.D. Fla. 2017) (cleaned up) (citing *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013)). Tushbaby's Amended Complaint clearly makes out a claim under FDUTPA. First, selling knock-off goods without authorization is a deceptive act or unfair trade practice because Zooyee attempted to profit off of Tushbaby's brand. Second, Tushbaby properly

8

pleaded that Zooyee's conduct caused its damages. [Amend. Compl. ¶¶ 3, 28, 60]. Finally, Tushbaby pleaded that it suffered actual damages as a result of Zooyee's conduct. [*Id.*]. Accordingly, Tushbaby satisfies all three elements of a FDUTPA claim and is entitled to default judgment as to Count IV.

   IV.   Count V – Unfair Competition

"Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida." *Adidas AG v. Adidas2013online.com*, No. 13-24398-CIV, 2013 WL 11579022, at *5 (S.D. Fla. Dec. 31, 2013), *report and recommendation adopted*, 2014 WL 11513084 (S.D. Fla. Jan. 14, 2014). Because this Court previously found that Zooyee's actions caused a likelihood of confusion by use of Tushbaby's trademarks, Tushbaby's Amended Complaint also makes out a claim for Florida common law unfair competition and Tushbaby is entitled to default judgment as to Count V.

   V.   Relief

In the Motion, Tushbaby asks for (1) a permanent injunction, and (2) damages as to Counts II and III. After a review of the record and relevant authorities, this Court believes Tushbaby is entitled to its requested relief.

   a.   Injunctive Relief

A district court has the power to grant an injunction for successful claims brought under the Lanham Act. *See* 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995). Injunctive relief is available when a court grants a motion for default judgment. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004). "[A] plaintiff is entitled to permanent injunctive relief if the plaintiff succeeds on the merits of his or her claims and if the

equities involved favor injunctive relief." *Id.* Permanent injunctive relief is appropriate when a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted). Plaintiff has carried its burden on each of the four factors.

Specifically, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added; footnote call number omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales." (alteration added)). Tushbaby's Amended Complaint and the submissions show the goods produced, offered for sale, and/or sold by Zooyee are nearly identical to Plaintiff's genuine products, and consumers viewing Defendants' counterfeit goods post-sale would confuse them for Plaintiff's genuine products.

Tushbaby has no adequate remedy at law so long as Zooyee continue to operate the Amazon store because Tushbaby cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Tushbaby's reputation and goodwill if Defendants' infringing and counterfeiting actions can continue. Moreover, Tushbaby faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Zooyee face no hardship if it is prohibited from the infringement of Tushbaby's trademarks. Finally, the public interest supports the issuance of a permanent injunction against Zooyee to prevent consumers from being misled by Zooyee's products, and potentially harmed by their inferior quality. *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration

added; citation omitted)); *see also World Wrestling Ent., Inc. v. Thomas*, No. 12-cv-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).  The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Zooyee's infringing activities.  *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Without an injunction, Zooyee may continue to infringe on Tushbaby's marks and sell its counterfeit products.  Accordingly, after review of the facts alleged in Tushbaby's Complaint, this Court believes Tushbaby is entitled to a permanent injunction against Zooyee to ensure it no longer willfully infringes on Tushbaby's marks.

b. <u>Statutory Damages</u>

In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. See 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds Zooyee's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good.  See 15 U.S.C. § 1117(c)(2).

The Court has wide discretion to determine the amount of statutory damages. See *PetMed*, 336 F. Supp. 2d at 1219 (citations omitted). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. See *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-Civ, 2014 U.S. Dist. LEXIS 56475, at *22-23, 2014 WL 1652044 (S.D. Fla. Apr. 23, 2014) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.") (alteration added; citations omitted)); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. 96-6961-Civ, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). The option of a statutory damages remedy in trademark counterfeiting cases is sensible given evidence of a defendant's profits in such cases is frequently almost impossible to ascertain. See, e.g., S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *PetMed*, 336 F. Supp. 2d at 1220 (recognizing that statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure" (alteration added; citations omitted)).

This case is no exception. The allegations of the Amended Complaint and the evidence establish Zoyee intentionally copied one or more of the Tushbaby Marks for the purpose of deriving the benefit of Tushbaby's well-known reputation. Zooyee has defaulted on Plaintiff's allegations of willfulness. [*See* Amend. Compl. ¶ 46]; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (concluding that a court may infer willfulness from the defendants' default); *PetMed*, 336 F. Supp. 2d at 1217 (stating that upon default, well-pleaded allegations are taken as true). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Zooyee does not continue their intentional and willful counterfeiting activities.

Tushbaby states that it "is electing not to pursue statutory damages or actual damages under the Copyright Act and is only seeking equitable relief in the form of a permanent injunction with respect to its copyright infringement claim." [Mot. at 16 n.4]. As such, Tushbaby requests only $1,000,000 from Zooyee. This award should be sufficient to deter Zooyee and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. section 1117(c). The Court finds this award of statutory damages falls within the permissible range under 15 U.S.C. section 1117(c) and is just. *See Chanel, Inc. v. Individuals,* No. 24-cv-22336-BLOOM/Elfenbein, 2024 U.S. Dist. LEXIS 145638 (S.D. Fla. Aug. 15, 2024).

## CONCLUSION

For the reasons stated above, Tushbaby is entitled to a default judgment against Defendant Zooyee. Accordingly, it is **ORDERED AND ADJUDGED** that the Motion [**ECF No. 135**] is **GRANTED**. Default final judgment and a permanent injunction shall be entered by separate order.

**DONE AND ORDERED** in the Southern District of Florida on May 28, 2025.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:   counsel of record